17 Neb. App. 544
IN RE INTEREST OF KENNA S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT
v.
DAVID S., APPELLEE.
No. A-08-793.
Court of Appeals of Nebraska.
Filed April 28, 2009.
Sandra K. Markley, Deputy Sarpy County Attorney, for appellant.
Ann W. Davis, P.C., for appellee.
IRWIN, CARLSON, and CASSEL, Judges.
PER CURIAM.

I. INTRODUCTION
The State of Nebraska appeals from an order of the juvenile court denying the State's motion to terminate the parental rights of David S., the natural father of Kenna S. The State alleges that the juvenile court erred in failing to find that the statutory grounds for termination under Neb. Rev. Stat. § 43-292(6) and (7) (Reissue 2008) were proven and in failing to find that such termination was in the best interests of Kenna. Upon our de novo review of the record, we find that the State proved by clear and convincing evidence that at the time of the termination hearing, Kenna had been in an out-of-home placement for more than 15 months of the most recent 22 months pursuant to § 43-292(7), and that terminating David's parental rights is in the best interests of Kenna. Accordingly, we reverse the order of the juvenile court and remand the matter with directions.

II. BACKGROUND
These proceedings involve Kenna, David's daughter, who was born on July 26, 1999. The juvenile court terminated Kenna's mother's parental rights as to Kenna, and such termination is not a part of this appeal.
David's and Kenna's involvement with the juvenile court began in January 2006 as a result of allegations that David had sexually assaulted his 11-year-old stepdaughter, Kenna's half sister, and had viewed child pornography. Kenna was removed from David's care on January 5 and placed in the custody of the Department of Health and Human Services (DHHS). Ultimately, Kenna was adjudicated as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004).

1. PROCEDURE AT TERMINATION HEARING
We begin our review of the background of this case with a discussion of the procedural abnormalities which took place at the parental rights termination hearing in November 2007. While we normally begin our analysis with a more chronological review of the substance of the case, we briefly diverge from this typical format in order to provide a clear context for our factual analysis.
The termination hearing began on November 16, 2007. Although both the State and David rested at the close of the hearing on November 16, the juvenile court continued the matter and heard additional evidence in March, June, and July 2008. We briefly recount the specific circumstances of each hearing; however, we note that, as we will discuss more thoroughly below, we do not consider any evidence presented after the hearing on November 16, 2007, in our analysis of whether David's parental rights should be terminated.
The initial hearing on the State's motion for termination of parental rights was held on November 16, 2007. At the hearing, the State called numerous witnesses to testify concerning David's compliance with the court-ordered rehabilitation plan and Kenna's best interests. At the conclusion of its evidence, the State rested. Subsequently, David testified in his own behalf. At the conclusion of David's testimony, he rested. The State then offered rebuttal evidence, and both the State and David provided a closing argument to the court. At the conclusion of the arguments, the juvenile court stated that it would provide the State "30 days to submit cases or a brief" and would provide David 30 days to respond to the State's brief. The court indicated that it would revisit the case in "less than 90" days. The court also informed David: "So, in the interim, I'm going to direct [that DHHS] arrange services for you that are consistent with what are contained in [a therapist's] evaluation and that you participate in some sort of sex offender treatment."
On March 19, 2008, the court held a further hearing to address the State's motion to terminate David's parental rights. The evidence presented at this hearing generally indicated that David was attending therapy with Dr. Stephen Skulsky, but that he had not yet submitted to a polygraph examination despite his adamant assertions that he had not sexually assaulted his stepdaughter. Additionally, the evidence indicated that Dr. Skulsky could not conduct therapy "properly" without the results of a polygraph.
Based on the evidence presented at this hearing, the juvenile court found, "Dr. Skulsky's testimony suggests that a little more time, in fact, is actually reasonable and necessary and I'm not going to dispute that." The court ordered David to submit to a polygraph examination and told him:
[T]he issue for me is whether or not you're making an earnest effort at correcting what brought this case here, and what I heard today is no from Dr. Skulsky, [you are] not, but over the next short term [you] might be capable of doing it. So that's really the issue for me. You don't have a lot of time.
The court continued the matter and took the issue of termination under advisement.
On June 25, 2008, a third hearing was held regarding the State's motion to terminate David's parental rights. At this hearing, the parties informed the court that David had taken a polygraph examination and that the results of the test revealed that David was deceptive when he stated that he had not touched the vaginal area of his stepdaughter and when he stated that he had not viewed pornographic images of children.
Dr. Skulsky had stated in a treatment summary that he was not able to tell the court that David was ready to see Kenna. At the hearing, Dr. Skulsky also stated that he would like the court to give David additional time to pursue his therapeutic goals and to work on acquiring a relationship with Kenna.
The juvenile court again took the issue of termination under advisement and continued the hearing. The court also told David:
I need you to engage with Dr. Skulsky totally with what brought you here and how this can be corrected. Now, he's just told me that he would like two months to work with you. I can probably do that, but I don't want to do that if I think there's no chance or no hope that the circumstances will change.
On July 16, 2008, another hearing was held on the State's motion to terminate David's parental rights. At this hearing, the court dismissed the State's motion to terminate David's parental rights.

2. SUBSTANTIVE EVIDENCE
We continue our review of the record with a more chronological and detailed discussion of the evidence presented at the November 2007 termination hearing, which evidence we consider in our analysis of whether David's parental rights should be terminated.
As we noted above, Kenna was removed from David's care on January 5, 2006, shortly before the State filed a petition alleging that Kenna was a child within the meaning of § 43-247(3)(a) through the faults or habits of David. The petition alleged, among other things, that David had been arrested and charged with first degree sexual assault of his 11-year-old stepdaughter, Kenna's half sister, and with 11 counts of "child pornography." Kenna was placed in foster care by DHHS and has remained in foster care since that time. David was ordered to have no contact with Kenna. He denied the allegations in the petition.
From January to October 2006, numerous hearings were held on the matter, but David's adjudication hearing was delayed as the parties gathered evidence and resolved unrelated issues. During these 9 months, the juvenile court continued placement of Kenna with DHHS and ordered David to have no contact with her.
In November 2006, an adjudication hearing was held. After the presentation of evidence, the juvenile court found the allegation that David had been arrested and charged with sexual assault and child pornography to be true by a preponderance of the evidence. The court found Kenna to be a child within the meaning of § 43-247(3)(a). The court ordered David to (1) complete a psychological evaluation; (2) cooperate with DHHS; (3) have no contact with Kenna; and (4) maintain a suitable residence for himself, seek and maintain gainful employment, and maintain reasonable contact with his case manager.
In January 2007, a disposition hearing was held. The juvenile court found that reasonable efforts had been made to eliminate the need for the removal of Kenna from her home, but that returning Kenna to David would be contrary to her best interests. The court continued placement of Kenna with DHHS. The court also ordered David to complete additional requirements, including (1) participating in sex-offender-specific treatment or therapy and (2) completing a parenting program.
In February 2007, David entered into a plea agreement with the State regarding the pending sexual assault and child pornography charges. The exact terms of this plea agreement are not discussed in our record. However, the record does indicate that as a result of this plea agreement, David was incarcerated from February to June.
After David was released from jail in June 2007, another disposition hearing was held. At this hearing, the juvenile court again found that reasonable efforts had been made to eliminate the need for the removal of Kenna from her home, but that returning Kenna to David would be contrary to her best interests. The court continued placement of Kenna with DHHS. The court also ordered David to participate in the "R-SAFE" program, a therapeutic program focused on the specific needs of individuals who have been identified as sex offenders.
Sometime after this disposition hearing, David contacted the R-SAFE program and began meeting with the coordinator of the program to complete the "assessment phase" of the therapeutic process. David attended three sessions in July 2007. During his third session, David was informed that he would have to submit to a polygraph test as a part of the intake process. At a subsequent session, David stated that he did not want to continue with the program. He believed that he had not done anything wrong and that to participate in the program any further would force him to incriminate himself in some way.
On August 9, 2007, the State filed a motion for termination of David's parental rights. In the motion, the State alleged that Kenna was a child within the meaning of § 43-292(6) and (7) and that it would be in Kenna's best interests if David's parental rights were terminated.
After David's involvement with the R-SAFE program had ceased and a few weeks prior to the hearing on the State's motion to terminate his parental rights, he inquired about other sex-offender-specific treatment or therapy providers. David ultimately set up an appointment with Dr. Skulsky and completed a psychological evaluation. In the evaluation report, Dr. Skulsky recommended that David participate in psychotherapy to address his mental health issues. Dr. Skulsky stated that he did not possess enough information to determine whether David had, in fact, sexually assaulted his stepdaughter.
Ultimately, the juvenile court found that the State presented insufficient evidence to terminate David's parental rights. The State appeals from the decision here.

III. ASSIGNMENTS OF ERROR
The State alleges that the juvenile court erred in failing to find that the statutory grounds for termination of David's parental rights with regard to Kenna under § 43-292(6) and (7) were proven and in failing to find that such termination was in the best interests of Kenna.

IV. ANALYSIS

1. STANDARD OF REVIEW
[1,2] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Xavier H., 274 Neb. 331, 740 N.W.2d 13 (2007). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. See In re Interest of Dylan Z., 13 Neb. App. 586, 697 N.W.2d 707 (2005).
[3] For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. See In re Interest of Xavier H., supra. The State must prove these facts by clear and convincing evidence. See id.

2. PROCEDURE AT TERMINATION HEARING
Before we begin our discussion of the State's argument that the juvenile court erred in failing to terminate David's parental rights, we first determine the evidence we are to consider in our analysis.
As we mentioned above, there were abnormalities in the manner the termination hearing was conducted. The termination hearing began in November 2007. At the conclusion of the parties' presentation of evidence, both parties rested and gave closing arguments. The juvenile court requested that the parties brief the issues and set up a briefing schedule. The juvenile court then indicated that David should continue to work with DHHS to complete his rehabilitation plan. The court stated it would revisit the case in less than 90 days.
In March 2008, the parties again appeared before the juvenile court. At this hearing, the court heard testimony and accepted evidence concerning David's progress in therapy. The court continued the hearing to allow David more time to engage in the therapeutic process.
In June 2008, another hearing was held. Again, the parties appeared before the juvenile court, and again, the court heard testimony and accepted evidence concerning David's progress in therapy. Again, the court continued the hearing to allow David more time to engage in the therapeutic process.
In July 2008, the juvenile court determined that the State did not provide sufficient evidence to warrant termination of David's parental rights. The court did indicate that it "base[d its] decision . . . upon what's been submitted as of November 16th . . . ." However, the court also mentioned David's efforts in therapy since the November 2007 hearing.
We note that the juvenile court's decision to accept further evidence after the November 2007 hearing resulted in confusion and an unclear record. Upon our review, we conclude that the case was submitted after the November hearing, pending the submission of briefs. The parties had presented all of their evidence and had rested their cases. Accordingly, the only evidence we consider in our analysis of whether the State met its burden in proving that David's parental rights should be terminated is the evidence presented at the November hearing.

3. STATUTORY GROUNDS FOR TERMINATION
The State assigns as error the juvenile court's failure to find that it presented clear and convincing evidence to prove the statutory grounds for termination of David's parental rights. In the State's motion to terminate David's parental rights, it alleged that termination was appropriate pursuant to § 43-292(6) and (7). Upon our de novo review, we agree with the State's assertions that it presented sufficient evidence to prove a statutory basis for termination of David's parental rights. Specifically, we find that the evidence clearly and convincingly established that Kenna was in an out-of-home placement for at least 15 of the most recent 22 months, pursuant to § 43-292(7).
Termination of parental rights is warranted whenever one or more of the statutory grounds provided in § 43-292 are established. Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." This section operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. See In re Interest of Aaron D., 269 Neb. 249, 691 N.W.2d 164 (2005).
In this case, the record contains uncontradicted evidence that Kenna was removed from David's care in January 2006 and that she continuously resided in an out-of-home placement throughout the pendency of the proceedings. As a result, at the time of the filing of the State's motion to terminate David's parental rights in August 2007, Kenna had been in an out-of-home placement for approximately 19 months. Accordingly, it is clear that Kenna was in an out-of-home placement for 15 or more months of the most recent 22 months as § 43-292(7) requires.
We note that the record indicates that David was incarcerated from February to June 2007. David's 4-month incarceration occurred during the 22 months immediately prior to the State's filing of the motion for termination of parental rights. There is some discussion in the record and in the parties' appellate briefs regarding the effect of David's incarceration on the calculation of how long Kenna has been in an out-of-home placement for the purposes of § 43-292(7).
[4] This court has previously described the proper application of § 43-292(7) as follows:
The proper application of this subsection consists of counting the most recent 22 months preceding the filing of the petition to terminate parental rights, followed by counting how many of those 22 months the child was in out-of-home placement. If the child was in out-ofhome placement for 15 of those 22 months, the statutory grounds for termination of parental rights are satisfied and termination of parental rights is appropriate, subject to a determination that such termination is in the child's best interests.
In re Interest of Kindra S., 14 Neb. App. 202, 210, 705 N.W.2d 792, 801 (2005). In addition, this court has held that "[i]n a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis." In re Interest of Kindra S., 14 Neb. App. at 209-10, 705 N.W.2d at 800.
Given the mechanical manner in which § 43-292(7) is to be applied, we find that the time that David spent incarcerated need not be excluded from our determination of whether Kenna was in out-of-home placement for 15 of the 22 months immediately preceding the motion to terminate parental rights. Rather, we find that David's incarceration is a factor to consider in the best interests step of the analysis of whether his parental rights should be terminated.
There is clear and convincing evidence that termination of David's parental rights was appropriate pursuant to § 43-292(7). In light of our finding, we move to the next step in our analysis and examine whether the State proved by clear and convincing evidence that termination of David's parental rights is in Kenna's best interests.

4. BEST INTERESTS
The State asserts that the juvenile court erred in failing to find that it had presented sufficient evidence to demonstrate that termination of David's parental rights is in Kenna's best interests. Essentially, the State alleges that because David failed to complete a sex-offender-specific treatment or therapy program, he failed to adequately comply with his court-ordered rehabilitation plan, failed to become rehabilitated, and failed to prove himself a "fit" parent.
Upon our de novo review of the record, we find sufficient evidence to demonstrate that David has not complied with his court-ordered rehabilitation plan and that termination of David's parental rights is in Kenna's best interests. We, therefore, reverse the order of the juvenile court and remand the matter with directions to terminate David's parental rights as to Kenna.
In the previous section, we found that termination of David's parental rights was appropriate pursuant to § 43-292(7). As a result, we declined to address the sufficiency of the evidence demonstrating that termination was also appropriate pursuant to § 43-292(6). We, therefore, treat our discussion of whether terminating David's parental rights is in Kenna's best interests as though § 43-292(7) is the only statutory basis for termination.
In cases where termination of parental rights is based solely on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. In re Interest of Aaron D., 269 Neb. 249, 691 N.W.2d 164 (2005). In such a situation, because the statutory ground for termination does not require proof of such matters as abandonment, neglect, unfitness, or abuse, as the other statutory grounds do, proof that termination of parental rights is in the best interests of the child will require clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. In re Interest of Aaron D., supra.
[5, 6] Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. In re Interest of Joshua M. et al., 251 Neb. 614, 558 N.W.2d 548 (1997). Furthermore, the Nebraska Supreme Court has previously recognized that children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. Id.
In this case, the evidence shows that despite almost 2 years of efforts by DHHS and the juvenile court, David has been unable or unwilling to rehabilitate himself. Kenna was adjudicated as a child within the meaning of § 43-247(3)(a) because of allegations that David had sexually assaulted his stepdaughter and had possessed child pornography. As a result of these allegations, the juvenile court ordered David to complete sex-offender-specific treatment or therapy. David did not comply with the court's orders regarding the sex offender treatment, and as a result, he did not correct the conditions that led to Kenna's adjudication.
David was first ordered to complete sex offender treatment in January 2007. There is no indication that David took any steps toward achieving this goal from January to February 2007, before David was incarcerated. David did not contact any agencies about beginning sex offender treatment, nor did he discuss his options with the family's caseworker, during that time.
The record indicates that David was incarcerated from February to June 2007. While we understand that David's incarceration may have precluded him from engaging in sex offender treatment from February to June 2007, we also note that David could have taken steps to inquire about or set up a treatment program while he was still in jail. However, the family's caseworker testified that she did not have any contact with David during his incarceration.
After David was released from jail in early June 2007, he did not take any active steps toward achieving the goals of his rehabilitation plan. He did not seek out sex offender treatment from that time through mid-June 2007, when a hearing was held in the juvenile court to review Kenna's case. At the June hearing, the juvenile court ordered David to complete the R-SAFE program, a sex-offender-specific treatment program.
David began meeting with the coordinator of the R-SAFE program on July 9, 2007. He attended approximately four sessions, but ended his involvement with the program in August after learning in July that he would have to submit to a polygraph test. David informed the coordinator of the program that to participate any further would force him to incriminate himself; he stated to the coordinator's assistant that he had not done anything wrong.
The State filed its motion to terminate David's parental rights in August 2007. After this motion was filed, David began to inquire with DHHS about other possible treatment providers for the sex offender treatment. David's caseworker contacted providers to ascertain whether they would be able to provide him with a sex offender treatment program. Ultimately, David contacted Dr. Skulsky, and in October, he underwent a psychological evaluation.
Taken as a whole, the evidence reveals that David was no closer to completing a sex offender treatment program at the November 2007 parental rights termination hearing than he was in January 2007, when such treatment was initially ordered. David continually put off the court's order concerning sex offender treatment. David did not participate in sex offender treatment in January after such treatment was ordered. When David was released from jail in early June, he did not participate in sex offender treatment. It was only after the mid-June hearing that David took any steps toward completing sex offender treatment. However, David attended only four sessions at the R-SAFE program before he quit. David did not begin attending other sex offender treatment until October 2007, months after the motion to terminate his parental rights had been filed.
[7, 8] We briefly digress to discuss the possible implication of David's assertion that he left the R-SAFE program because he did not want to incriminate himself by participating in the program or to admit that he had sexually assaulted his stepdaughter. This court has previously found that courts may not terminate parental rights on the sole basis that a parent refuses to waive his or her right against self-incrimination. See In re Interest of Clifford M. et al., 6 Neb. App. 754, 577 N.W.2d 547 (1998). However, termination of parental rights may be based on a parent's failure to undergo meaningful therapy. See id.
Initially, we note that our analysis of David's noncompliance with the juvenile court's order to complete sex offender treatment does not center on David's termination of his involvement with the R-SAFE program. Rather, our analysis focuses on David's procrastination at seeking out any sex offender treatment.
Additionally, we note that evidence in the record is conflicting concerning why David stopped attending the R-SAFE program. The coordinator of the program testified that David stopped attending because he did not want to incriminate himself by continuing to participate. David testified that he stopped attending because he did not want to sign a piece of paper stating that he had sexually assaulted his stepdaughter. David indicated that he was willing to take a polygraph examination to prove he was innocent. Other evidence in the record indicates that David had already pled guilty or no contest to a charge stemming from the sexual assault allegations, which suggests that further prosecution for the sexual assault allegations may have been precluded.
Based on all of the evidence presented at the termination hearing, we conclude that this is not a case where David failed to engage in meaningful therapy solely because he did not want to incriminate himself. Rather, the evidence suggests that David did not believe that he needed sex offender treatment, did not want to participate in the treatment, and chose to delay compliance until it was too late.
[9] At the time of the November 2007 termination hearing, Kenna had been out of David's home for almost 2 years. In fact, as a result of a no contact order stemming from David's criminal charges and as a result of David's failure to comply with the sex offender treatment, David had not seen or talked to Kenna for almost 2 years. Despite the amount of time that had passed, David had not complied with the juvenile court's order to complete sex offender treatment. Rather, David continually put off the court's order. Testimony at the termination hearing revealed that sex offender treatment can often take 2 years. Testimony at the termination hearing also revealed that David would not be ready to regain custody of Kenna until he had completed such treatment. In fact, David would not be able to have any contact with Kenna until he had made significant progress in his sex offender treatment. Where the duration of a child's out-of-home placement warrants termination of parental rights under § 43-292(7), a parent's failure to substantially comply with court-ordered sex offender treatment weighs in favor of a finding that such termination is in the child's best interests.
Kenna should not be made to wait indefinitely for David to rehabilitate himself. She deserves permanency and stability. Although David was made aware that he could not regain custody or have contact with Kenna until he participated in sex offender treatment, he continuously delayed his participation in the treatment. Based on this evidence, we find sufficient evidence to demonstrate that termination of David's parental rights is in Kenna's best interests. We reverse the order of the juvenile court and remand the matter with directions to terminate David's parental rights as to Kenna.

V. CONCLUSION
We find that the State presented sufficient evidence to demonstrate that Kenna is a child within the meaning of § 43-292(7) and that termination of David's parental rights is in Kenna's best interests. Accordingly, we reverse the order of the juvenile court which denied the State's motion to terminate David's parental rights. We remand the matter with directions to enter an order terminating David's parental rights.
REVERSED AND REMANDED WITH DIRECTIONS.
IRWIN, Judge, dissenting.
I respectfully dissent from the conclusion of the majority that the State presented sufficient evidence to demonstrate that termination of David's parental rights is in Kenna's best interests. Contrary to the conclusion of the majority, there is insufficient evidence in the record to establish that termination of David's parental rights is in Kenna's best interests. For this reason, I would affirm the determination of the juvenile court which found that the State failed to prove by clear and convincing evidence that termination of David's parental rights is in Kenna's best interests.
The majority concentrates its analysis of whether terminating David's parental rights is in Kenna's best interests exclusively on David's failure to complete a sex offender treatment program. The majority concludes that evidence in the record establishes that "David did not believe that he needed sex offender treatment, did not want to participate in the treatment, and chose to delay compliance until it was too late."
There is no evidence in the record to suggest that David intentionally delayed participating in a treatment program. Rather, the evidence reflects that David sought out treatment when ordered to do so and worked to find a program suited to his individual needs. Evidence in the record revealed that a sex offender treatment program can last up to 2 years. Simply stated, David did not complete a sex offender treatment program because there was not enough time to complete such a program.
Kenna was not adjudicated as a child within the meaning of § 43-247(3)(a) until November 2006. David was not ordered to complete sex offender treatment until approximately 2 months after that, in January 2007.
Additionally, David was incarcerated from February to June 2007. While this incarceration does not necessarily excuse David's noncompliance with the rehabilitation plan, there was evidence to suggest that David was not able to participate in sex offender treatment while he was in jail.
After David was released from jail in June 2007, the court ordered him to complete the R-SAFE program, a sex-offenderspecific treatment program. David began meeting with the coordinator of the program on July 9. He attended approximately four sessions. He ended his involvement with the program after learning that to participate in this particular program, he would have to admit that he had sexually assaulted his stepdaughter.
Shortly after David ended his involvement with the R-SAFE program, the State filed its motion to terminate his parental rights. While this motion was pending, David inquired with DHHS about other possible treatment providers for the sex offender treatment. David's caseworker contacted multiple providers on his behalf to ascertain whether they would be able to provide him with a sex offender treatment program. Ultimately, in September 2007, David contacted Dr. Skulsky, and in October, he underwent a psychological evaluation and began treatment.
Therefore, when the evidence is taken as a whole, David was allowed only approximately 7 months to complete a sex offender treatment program. David was in jail for 4 out of those 7 months. As such, David was essentially provided with 3 months to complete sex offender treatment.
Even though David was not provided with a great deal of time to comply with the court's order, David did attempt to achieve compliance, and his efforts are clearly detailed in the record. He began attending the R-SAFE program just 25 days after the court ordered him to participate in that specific program. For 3 weeks thereafter, he attended one session a week. While David did discontinue his involvement with this program during the initial stage of the process, he explained that he did so because part of the program required him to "incriminat[e] himself."
After the State filed its motion to terminate his parental rights, David continued his efforts to comply with the court's order. He began to independently search for a different treatment provider for the sex offender treatment. At the time of the termination hearing, David was participating in a treatment program with Dr. Skulsky. As demonstrated at the termination hearing, David's efforts at compliance do not evidence a person who was intentionally delaying treatment. In fact, the only substantive evidence of any voluntary delay at compliance that the majority articulates is David's decision to discontinue treatment with the R-SAFE program. However, David's decision to discontinue his involvement with that program can be traced to his disagreement with some of the program's requirements, rather than to any attempt to delay his treatment.
Most notably, David declined to admit that he sexually assaulted his stepdaughter, which admission was a mandatory program requirement. David testified that he did not want to "incriminat[e] himself" with such an admission. While David's concern is not necessarily legally sound, it is not wholly unreasonable; nor does his concern rise to the level of proof that he was trying to delay treatment or that he had no intention of ever completing treatment, as the majority appears to infer.
Furthermore, the evidence reveals that David began to search for a more suitable program almost immediately after he terminated his involvement with R-SAFE. Such behavior is not consistent with someone who "did not believe that he needed sex offender treatment, did not want to participate in the treatment, and chose to delay compliance until it was too late." Rather, this evidence indicates that David was working to comply with the court's orders, to rehabilitate himself, and to be reunited with Kenna.
While it is true that Kenna should not be made to wait indefinitely for David to rehabilitate himself, it is important to recognize the importance of granting a parent adequate opportunity to effectuate rehabilitation. David should be provided with an adequate opportunity to comply with the court's rehabilitation plan.
David was provided with approximately 3 months to complete a treatment program. Evidence in the record revealed that a sex offender treatment program can last up to 2 years. David's failure to complete his treatment during this brief time period does not, without more, establish that termination of his parental rights is in Kenna's best interests.