IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF OWEN B. & GAVIN B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF OWEN B. AND GAVIN B., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

AYSIA E., APPELLANT, AND ARIEL B., APPELLEE.

Filed August 9, 2022.    Nos. A-21-1017, A-21-1018.

Appeals from the District Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Leonard G. Tabor for appellant.

Kirk M. Fellhoelter, Scotts Bluff Deputy County Attorney, for appellee State of Nebraska.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellee Ariel B.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Aysia E. appeals the order of the county court for Scotts Bluff County, sitting as a juvenile court, which terminated her parental rights to her two children: Owen B. (case No. A-21-1017) and Gavin B. (case No. A-21-1018). We have consolidated Aysia's two appeals for disposition. Based upon our de novo review of the record, we affirm the order of the juvenile court.

- 1 -

# BACKGROUND

## PROCEDURAL BACKGROUND

Aysia is the biological mother of Owen (born 2017) and Gavin (born 2015). Ariel B. is the boys' biological father. The parental rights of Ariel were also terminated during the proceedings below. However, because he did not appeal from the termination of his parental rights, he is not a party to this appeal, and he will only be discussed as necessary.

In February 2021, the Department of Health and Human Services (the Department) was notified by Owen and Gavin's school of concerns that Aysia was picking up the boys while she was under the influence of drugs. When contacted by the Department, both Aysia and Ariel admitted to having an addiction to fentanyl and both agreed to participate in a voluntary safety plan. As a part of this plan, the boys were placed in the home of their paternal grandmother, while Aysia and Ariel worked toward obtaining sobriety. Aysia and Ariel told the Department that they had a strong desire to obtain and maintain their sobriety. At that point in time, the parents reported taking the medication, suboxone, to help sustain their sobriety. Over the course of the next month, the Department did not observe Aysia and Ariel to be making progress toward sustained sobriety. As such, the Department recommended that formal proceedings be initiated.

On March 10, 2021, the State filed petitions in the juvenile court alleging that Owen and Gavin were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to the faults or habits of Aysia and Ariel. Specifically, as to Aysia, the petition alleged that her ongoing use of controlled substances placed the children at risk for harm and deprived them of necessary parental care. Also on March 10, the juvenile court entered an order placing the children in the temporary custody of the Department. The children remained living with their paternal grandmother, who was now their foster parent.

At a hearing on April 20, 2021, Aysia admitted to the allegations in the petition and the boys were adjudicated to be within the meaning of § 43-247(3)(a).

On September 3, 2021, a little over 4 months after the boys were adjudicated, the State filed a motion to terminate Aysia's parental rights. In the motion, the State alleged that termination was appropriate pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016), because Aysia had substantially and continuously or repeatedly neglected and refused to give the boys necessary parental care and protection, and § 43-292(4), because Aysia was unfit by reason of debauchery or her habitual use of intoxicating liquor or narcotic drugs. The State also alleged that termination of Aysia's parental rights was in the children's best interests. At a hearing on September 15, the juvenile court ordered that the permanency goal in the case be changed from reunification to adoption with a secondary goal of reunification.

## TERMINATION TRIAL

At the termination trial held on November 15, 2021, the State called three witnesses to testify: Karissa Harvey, the caseworker assigned to the family; Melissa Buhr, Aysia's probation officer since January 2021; and Adriana Bautista, the family support worker who supervised visits between Aysia, Ariel, and the boys.

Harvey has been the family's caseworker since February 2021, when Aysia and Ariel agreed to participate with a voluntary case plan. Harvey testified that the case plan goal throughout

the entire duration of the case was for Aysia to be able to provide a safe, sober, and appropriate environment for her children. The biggest barrier to Aysia's achievement of this goal was her ongoing use of methamphetamine and fentanyl. Harvey opined that methamphetamine use, in particular, has a very negative impact on a person's ability to be an appropriate parent. Harvey explained that while under the influence of methamphetamine, it would be difficult to act as a caregiver for a child.

According to Harvey, while Aysia did seek substance abuse treatment during the pendency of the juvenile court proceedings, she did not follow through with appropriate aftercare and, perhaps as a result, such treatment did not end her use of controlled substances. Aysia underwent a substance abuse evaluation in March 2021. The results of the evaluation included a recommendation that Aysia participate in a residential treatment program to address her drug addiction. Aysia entered a residential treatment program in Omaha on April 5 and was successfully discharged from that program on May 3. As a part of her aftercare, Aysia was supposed to reside in a sober living house for at least 3 months. This environment offered Aysia the opportunity to participate in intensive outpatient programming and narcotics anonymous meetings, in addition to assisting her with obtaining employment and permanent housing. Owen and Gavin could have also moved into the sober living house as Aysia progressed in her treatment. Aysia left the sober living house after 9 days. Ariel left his sober living house at the same time. The two stayed at various places over the next few weeks, finally returning to their former residence in Gering.

After returning to Gering, Aysia attended intensive outpatient programming for 2 to 3 weeks, but failed to successfully complete the program. Harvey testified that Aysia also failed to consistently attend narcotics anonymous meetings. In July and August 2021, Aysia wore sweat patches to determine whether she was continuing to use controlled substances. Aysia routinely reported that her patches fell off and could not be tested. Harvey testified that it was very uncommon for the patches to simply fall off.

In September 2021, Aysia entered a residential treatment program in Columbus. She stayed for one week before terminating her participation with this program. Harvey has had no further contact with Aysia since she left this treatment program.

When Aysia was not attending treatment, she was provided the opportunity to have supervised visitation with Owen and Gavin. Throughout the duration of the proceedings, Aysia never progressed past fully supervised visits which were held in a neutral location. In March 2021, Aysia was permitted to have visits with the boys for 10 hours per week. She regularly attended these visits until she left for treatment in April. Harvey testified that Aysia provided the boys with food during the visits and planned a variety of activities. Harvey believed that during the March and April visits, Aysia's interactions with Owen and Gavin were positive.

Aysia did not have any visits with Owen and Gavin in May 2021, after leaving the sober living house, because she did not have any contact with Harvey, despite Harvey's best efforts. Aysia's visits resumed in June when she returned to Gering. Aysia attended each scheduled visit in June, but arrived at least 20 to 30 minutes late to each visit. Aysia also attended each scheduled visit in July, but Harvey began to receive concerning reports regarding Aysia's behavior during the visits. Specifically, Aysia was falling asleep, was slurring her speech, and was demonstrating exaggerated body movements. Aysia was also less patient with the boys and was spending her

visitation time arguing with Ariel. Harvey believed that Aysia's behaviors were the result of her being under the influence of a controlled substance during the visits.

As a result of Aysia's behaviors during the visits in July 2021, her visitation time with the boys was reduced to 5 hours per week in August. However, the concern about Aysia being under the influence of a controlled substance during visits persisted. In order to keep the boys safe, Aysia's visits were further reduced to only 2 hours per week and such visits were to be held virtually. Aysia last saw Owen and Gavin in August. No visits were held in September because Harvey was unable to make contact with Aysia. And, by October, Aysia was incarcerated.

Harvey testified that during the time the case was pending, Aysia failed to attend a parenting class, failed to secure stable housing, and failed to obtain and maintain employment. Aysia worked for one day in June 2021 at a restaurant in Gering.

Buhr was Aysia's probation officer at the time of the termination trial. Aysia was convicted of "DUI/drug, first offense" in January 2021 and placed on probation for a 6-month period. This probationary period was extended for an additional 6 months in July because Aysia had not completed the requirements of her probation order. In particular, Aysia had failed to abstain from using drugs. According to Buhr, Aysia regularly admitted to ongoing and persistent drug use. Aysia was not consistent with substance abuse counseling and did not comply with drug testing. Aysia had only reported for 4 out of 53 required drug tests since January 2021. Each of the four tests Aysia complied with were positive for either fentanyl or methamphetamine.

By the time of the termination trial, Aysia was in jail awaiting trial on two additional criminal charges, obstructing a police officer, and possession of a controlled substance. In addition, a motion to revoke Aysia's probation for her violations of the court's orders was pending.

Bautista was the family support worker who supervised visits between Aysia, Ariel, and the boys, from March through September 2021. Bautista testified that the supervised visits typically occurred at a visitation center or at a local park where the boys could fish, swim, explore, and play outside. Bautista indicated that initially, Aysia and Ariel were good about providing meals and planning activities for the visits. Aysia did have to be reminded at some point to provide the boys with full meals rather than just snack foods, but Aysia responded appropriately to this reminder. Generally, Bautista believed the boys appeared excited to see their parents during visits.

Bautista indicated that during the first few months of supervised visits, she did not have many safety concerns other than that the boys would sometimes run away from their parents and Aysia and Ariel would not immediately respond and retrieve the boys. As time went on, Bautista developed additional safety concerns. Bautista testified that the parents began arriving at least 15 minutes late to every scheduled visit due to their transportation problems. During one visit, Bautista overheard Aysia and Ariel arguing with each other when the children were standing next to them. Ariel called Aysia a derogatory name. Then, beginning in August 2021, Bautista began to have concerns that Aysia and Ariel were under the influence of drugs during the visitation sessions. She reported observing Aysia, in particular, to have exaggerated movements, excessive sweating, rapid speech, and dark circles under her eyes. Aysia fell asleep during one visit.

As the family support worker, Bautista was also responsible for applying Aysia's sweat patches to determine whether she was using drugs. Bautista testified that Aysia did not consistently wear the sweat patch, claiming that it kept falling off. Bautista testified that Aysia expressed a

desire to achieve and maintain sobriety for the sake of her children, but she simply did not, or could not, follow through on this desire.

In an order filed on November 24, 2021, the juvenile court terminated Aysia's parental rights to Owen and Gavin. The court found that the boys were within the meaning of § 43-292(2) and (4):

> In the present case, the parents are in worse shape than when the cases started. They are both incarcerated. Both parents have failed to meaningfully address their drug addictions. Neither parent has employment or housing that would provide their children stability. Therefore, the court finds by clear and convincing evidence, that the State has established § 43-292(2) and (4). The habitual use of controlled substances is seriously detrimental to the health, morals, and wellbeing of the children.

The court also found that termination of Aysia's parental rights was in the boys' best interests:

> In the present case, [Aysia is] unfit and cannot perform reasonable parental obligations. The court cannot find any beneficial relationship between the parent and child. Neither parent can provide a safe and stable home. These parents are in the grip of fentanyl and methamphetamine. [There was evidence presented] that these drugs present serious obstacles to a parent's ability to provide necessities for their kids. The issues that brought the family to court have not improved. In fact, they have worsened. Thus, the evidence is clear and convincing that it is in the juveniles' best interests that the parental rights of [Aysia] are terminated.

Aysia appeals from the juvenile court's order terminating her parental rights.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Aysia assigns as error the juvenile court's finding that there was sufficient evidence to prove the relevant statutory grounds for termination of her parental rights and its finding that termination of her parental rights is in the children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016).

## ANALYSIS

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). See *In re Interest of Xavier H.*, 274 Neb. 331, 740 N.W.2d 13 (2007). The State must prove these facts by clear and convincing evidence. *In re Interest of Kenna S., supra*. See *In re Interest of Xavier H., supra*.

In her brief on appeal, Aysia assigns as error the juvenile court's finding that there was sufficient evidence presented at the termination trial to prove that termination of her parental rights was warranted pursuant to § 43-292(2) and (4). However, Aysia's argument on this issue provides only a recitation of the evidence presented at trial along with propositions of law generally relating to the termination of parental rights. The argument does not provide any analysis which links the facts of the case to the relevant propositions of law. Most importantly, the argument does not provide any explanation about how the juvenile court erred in applying § 43-292(2) and (4). For an alleged error to be considered by an appellate court, an appellant must both properly assign and specifically argue the alleged error. *State v. Howell*, 26 Neb. App. 842, 924 N.W.2d 349 (2019). As a result of the inadequacies of Aysia's argument, we find that she did not sufficiently assign and argue the issue of the statutory basis for termination of her parental rights. However, when an appellant fails to comply with the format for briefing, the appellate court may examine the proceedings for plain error, which we do here. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id*. Upon our review, we conclude that the district court did not commit plain error in finding that termination of Aysia's parental rights was warranted pursuant to § 43-292(4).

Section 43-292(4) allows a juvenile court to terminate parental rights when "[t]he parents are unfit by reason of . . . habitual use of . . . narcotic drugs . . . which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile." In this case, the record is replete with evidence of Aysia's ongoing and pervasive addiction to fentanyl and methamphetamine. The reason Aysia and her children were brought to the attention of the Department was Aysia picking up the boys from school while clearly under the influence of drugs. Aysia readily admitted that she had a substance abuse problem and, while she expressed a desire to maintain a sober lifestyle, she demonstrated an inability to do so throughout the duration of the juvenile court proceedings. Aysia quickly relapsed after attending residential substance abuse treatment. Her second attempt at residential treatment was unsuccessful, as she left after only a few days.

Aysia's continued drug use directly affected Owen and Gavin even after they were removed from her home. By July 2021, Aysia regularly attended visits with the boys while under the influence of a controlled substance. She exhibited slurred and rapid speech, exaggerated body movements, and excessive sweating. She fell asleep during at least one visit. Essentially, Aysia was unable to appropriately care for the boys even during the short amount of time she saw them for visits each week. Ultimately, Aysia's visits were modified to be virtual, rather than in person, due to the risk she posed to the boys' safety and well-being. By the time of the termination trial, Aysia was incarcerated and awaiting trial on two charges, including a charge of possession of a controlled substance.

Thus, pursuant to the totality of the evidence, we conclude that there was no plain error in the juvenile court's finding that termination of Aysia's parental rights was warranted pursuant to § 43-292(4). Given this determination, we need not consider whether termination of Aysia's

parental rights was proper pursuant to § 43-292(2), since any one of the statutory grounds in § 43-292 can serve as the basis for termination of parental rights when there is also clear and convincing evidence that termination is in the children's best interests. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

BEST INTERESTS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. Although the term "unfitness" is not expressly stated in § 43-292, the Nebraska Supreme Court has said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Leyton C. & Landyn C., supra*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id*.

In her brief on appeal, Aysia argues that the evidence presented at the termination trial revealed that she has a good relationship with Owen and Gavin. She asserts that she should be provided more time to demonstrate that she is capable of maintaining a sober lifestyle so that she can be reunited with her children. Upon our review of the record, we do not find evidence of a beneficial relationship between Aysia and her children. Moreover, while we recognize that the juvenile court proceedings were pending for only 6 months prior to the State filing its motion to terminate Aysia's parental rights and for only 8 months prior to the termination trial, there is nothing in the record to suggest that even if Aysia is given further time, that she will be able to obtain and maintain her sobriety at any point in the near future. We agree with the finding of the juvenile court that Aysia was actually in a far worse position at the time of the termination trial than she was at the beginning of the proceedings.

Aysia has demonstrated a chronic inability to obtain or maintain her sobriety despite being offered numerous services, including, residential treatment on two separate occasions; a sober living house; intensive outpatient treatment; and drug testing. Notably, during the time the juvenile court proceedings were pending, Aysia was on probation and was court-ordered to not use controlled substances. Such court order also did not deter her drug use.

Aysia's ongoing drug use negatively impacted her ability to be an appropriate parent and negatively impacted her relationship with Owen and Gavin. During her testimony at the termination trial, Harvey indicated that methamphetamine use, in particular, is detrimental to one's ability to be an appropriate caregiver. Aysia's conduct during the juvenile court proceedings supports this notion. Aysia was first brought to the attention of the Department when she repeatedly picked her boys up from school while under the influence of a controlled substance. Furthermore,

when Aysia was under the influence during visits with her children, she was not capable of being an appropriate caregiver. She fell asleep. Her speech was slurred and rapid. She could not control her own movements. She was less patient with the boys and fought more with Ariel. Ultimately, Aysia chose her addiction to controlled substances over seeing her children. She has not had any contact with the boys since August 2021. Prior to that time, her visitation time was significantly reduced as a result of her attending the visits while under the influence.

Aysia's use of controlled substances has also impacted her ability to be physically present in the boys' lives. By the time of the termination trial, Aysia was jailed and awaiting trial on a charge of obstructing a police officer and possession of a controlled substance. She was also facing revocation of her previous order of probation.

Given the evidence presented at the termination trial, we find that the State has rebutted the presumption that the children's best interests are served by having a relationship with their parents. As to Aysia, the State has proven that she is not a fit parent. Aysia cannot be a fit parent unless or until she has obtained and maintained a stable and sober lifestyle. She has demonstrated a current inability to maintain such a lifestyle. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). We find no abuse of discretion in the juvenile court's decision that termination of Aysia's parental rights is in Owen's and Gavin's best interests.

## CONCLUSION

We conclude that the juvenile court did not err in terminating Aysia's parental rights to Owen and Gavin. There was no plain error in the juvenile court's finding that termination was warranted pursuant to § 43-292(4) and there was sufficient evidence presented to demonstrate that termination was in the boys' best interests. We affirm.

AFFIRMED.