IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF BLAZE N.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF BLAZE N., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JASMINE H., APPELLANT.


Filed March 14, 2023.    No. A-22-638.


Appeal from the Separate Juvenile Court of Douglas County: CANDICE J. NOVAK, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Melinda S. Currans for appellant.

Kristin Huber, Deputy Douglas County Attorney, for appellee.


PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jasmine H. appeals the termination of her parental rights to her son, Blaze N. She contends that the Douglas County Separate Juvenile Court erred in terminating her parental rights pursuant to Neb. Rev. Stat. § 43-292(1), (2), (6), and (7) (Reissue 2016) and finding that termination was in Blaze's best interests. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND FACTS

Jasmine is the biological mother of Blaze who was born in February 2013. Blaze's purported biological father is Benjamin N. Blaze resided with Jasmine and Benjamin until

approximately 2017 when Jasmine and Blaze moved into separate residences. Following their separation, Blaze resided with Jasmine until August 2019, at which time Blaze moved in with Benjamin, allegedly to simplify Blaze's transportation to and from school. As a result of Blaze missing 32 of 37 days of the school year, school administrators contacted Jasmine to inform her of the absences and a Department of Health and Human Services (DHHS) worker contacted Benjamin who asserted that he was homeschooling Blaze. After investigating the matter, DHHS learned that Benjamin had not properly enrolled Blaze for homeschooling. Benjamin repeatedly failed or refused to complete the homeschool enrollment process.

On January 3, 2020, Blaze was removed from Benjamin's care because Blaze's paternity had not been legally established, Benjamin failed to enroll Blaze in homeschooling, and Benjamin failed to meet Blaze's educational needs. At that time, DHHS attempted to contact or locate Jasmine but was unable to do so. Blaze was placed with Paulette G., his paternal grandmother, and remained in her care throughout this case.

## 2. ADJUDICATION

On January 3, 2020, the State filed an adjudication petition alleging that Blaze was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because Jasmine neglected or refused to provide for Blaze's educational needs; that Blaze lacked proper parental care by reason of Jasmine's fault or habits including that Jasmine was homeless and failed to provide safe, stable and/or appropriate housing for Blaze; and that, for the above reasons, Blaze was at risk for harm. At the time of the filing of the adjudication petition, Jasmine's whereabouts were unknown. After unsuccessful attempts to locate Jasmine, the State provided service of the adjudication petition by publication.

In March 2020, following an adjudication hearing, which Jasmine failed to attend but during which she was represented by court-appointed counsel, the juvenile court filed an order which adjudicated Blaze based upon the court's findings that the allegations contained in the adjudication petition were true by a preponderance of the evidence. During the course of this case, Jasmine was court-ordered to, inter alia, complete an initial diagnostic interview; complete a psychological evaluation with a parenting assessment and follow the recommendations; complete a chemical dependency evaluation and follow the recommendations; cooperate with family support worker services; obtain and maintain safe, appropriate, and adequate housing; obtain and maintain a legal source of income; successfully complete a parenting course; participate in supervised visitation; and submit to random drug and alcohol testing.

Additional attempts to contact Jasmine were unsuccessful until May 12, 2021, when Jasmine filed a motion for supervised visitation. The court granted Jasmine supervised visitation twice per week and provided that, after six weeks of consistent visitation, Jasmine's visitation could be gradually increased.

## 3. TERMINATION OF PARENTAL RIGHTS

On July 15, 2021, the State filed a motion to terminate Jasmine's parental rights to Blaze pursuant to § 43-292(1) (abandonment), (2) (substantial and continuous or repeated neglect), (6) (reasonable efforts to preserve and reunify failed to correct conditions leaving to adjudication),

and (7) (out-of-home placement for 15 out of most recent 22 months). The motion further alleged that termination was in Blaze's best interests.

The termination hearing was held over four days between October 2021 and April 2022. Witnesses included Jasmine; Benjamin; Betsy Miller, the case manager supervisor in this case from January 2020 until September 2021; and Paulette.

### (a) Jasmine's Testimony

Jasmine testified that, in approximately March 2020, Benjamin informed her that Blaze had been removed from his care and that Child Protective Services had placed Blaze with Paulette. Jasmine stated that she did not become aware of the court proceedings until May 2021, which was 15 months after Blaze had been removed from Benjamin's care. She further testified that between 2020 and March 2022, she provided between $2,300 and $2,500 in financial support for Blaze as well as having provided 40 to 50 cards and letters to Blaze and sending him money, clothes, and gifts.

### (b) Benjamin's Testimony

Benjamin testified that, since January 2020, Blaze has received approximately 50 cards or letters from Jasmine; that Jasmine provided gifts to Blaze including clothing, toys, money, and food; and that Jasmine has given Benjamin approximately $2,000 to $2,500 for Blaze's care.

### (c) Court Requirements

Of these court-ordered requirements previously set forth, Jasmine fully completed two requirements: an IDI and a parenting class.

Jasmine partially completed the requirements to cooperate with family support worker services; to obtain and maintain a legal source of income; to successfully complete a parenting class; and to participate in supervised visitation. From May to October 2021, Jasmine participated in family support work consisting of working on goals including housing, employment, parenting classes, and evaluations; however, Jasmine's participation in family support was terminated due to lack of engagement. Likewise, Jasmine obtained employment for a short period of time; however, during most of the pendency of the case, Jasmine was unemployed. Jasmine testified at the termination hearing that she had employment "lined up." Jasmine also only partially complied with attending supervised visitation with Blaze by attending approximately 16 visits. Jasmine admitted that her first visit with Blaze occurred in May or June 2021 and that she has not had any visits with Blaze since September 2021, because her visits were "cancelled." Jasmine further testified that, during visits that did occur, Blaze showed affection towards her initially, but

> there were times that he just seemed like a totally different kid, like his attitude was different, like he was very rude at times. It was like certain morals and values that I have instilled in my son did not exist. They weren't displayed. He just was a totally different child, like he had no manners. I would ask him to get something or do something, and he would totally disregard it, and tell me he didn't want to, which that was a big problem for me because that was not the child that I raised. So it really concerned me on what is it that he's being taught or what is being expected of him on his day-to-day routine. Does he have

- 3 -

any kind of rules, any kind or expectations, any type of chores . . . what morals are being instilled in my son. That really matters to me.

Despite the juvenile court ordering Jasmine to fulfill certain requirements in order to reunite with Blaze, Jasmine failed to complete most of them including a psychological evaluation and a chemical dependency evaluation; failed to maintain safe, appropriate and adequate housing; and failed to submit to random drug and alcohol testing. Jasmine stated that she had not completed a chemical dependency evaluation because no referral had been made and that she had not been contacted regarding urinalysis testing. Jasmine testified that she had attempted to obtain housing through several programs but, at the time of the hearing, she was residing with her mother.

### (d) Best Interests

#### (i) Miller

Miller testified that she was unaware of Jasmine sending any cards, gifts, or letters to Blaze or otherwise providing any financial support to Blaze prior to the July 2021 filing of the motion to terminate; however, she acknowledged that Jasmine brought food on a few visits preceding the filing of the termination proceedings. Further, according to Miller, Jasmine did not attend any of Blaze's medical or school appointments and did not provide any of Blaze's day-to-day care.

Miller further testified that, in her opinion, termination of Jasmine's parental rights was in Blaze's best interests because

Blaze has spent the majority of the last . . . 24 months . . . [in] out-of-home care, and he spent the majority of that time not having any contact with [Jasmine], and that's not for lack of effort of case managers. He has been very behind in school. He's not any longer, but was for quite some time because there was no one to make educational decisions for him. I also believe that [Jasmine] made the decision to have him reside with someone whose paternity hadn't been established for, which left him with no one to make any medical decisions for him during that time.

#### (ii) Paulette

Paulette testified that when Blaze was placed with her on January 3, 2020, Blaze was unable to read, had limited school experience, and had limited interaction with children. However, at the time of the hearing, Blaze attends third grade, gets along with other children his age, and is now developmentally on track. According to Paulette, Blaze enjoys drawing, playing with Legos, going to a trampoline center, taking karate lessons, and playing basketball and football. She also stated that after receiving extra assistance with reading, he now is "really excited about reading." Paulette testified that she was responsible for Blaze's daily needs including making sure that Blaze attends school, has good nutrition, proper sleep, and good health care. They also read together, play "pick-up stix" and board games, and go to the zoo. At their home, Blaze's chores included making his bed, keeping his clothes folded and sorted, feeding and watering the cat, and sometimes, vacuuming or helping at the school where Paulette worked.

Paulette described Blaze's daily routine as follows:

Well, during the week we get ready for school. We . . . get breakfast, we get ready, he gets to school, and I usually pick him up afterwards at 4 o'clock. Sometimes he goes to

Crayon Castle maybe once or twice a week. He might go to day care, if I have a late meeting or something . . . I have to pick him up by 5:30. But other than that, . . . [during] weekends or in the evening, we're either doing homework, he loves to draw, does a lot of art work [sic]. [Blaze is] really into flag football right now through the YMCA, so we have practice during the week and he has games on Saturday.

According to Paulette, Blaze is a "[v]ery active" boy and has friends including his brother, cousin, and children from daycare. She further testified that they have rules regarding bedtime, homework, and manners.

During Blaze's first visit with Jasmine in May 2021, Blaze was "scared about going with a stranger," so Paulette drove him to the visit and waited in the car until the visit had concluded. During Blaze's time with her, Jasmine had approximately 16 visits with Blaze in two years. Paulette testified that, after visits with Jasmine, Blaze's behavior changed in a negative way which she described as "kind of bratty" and "kind of hyper." According to Paulette, Jasmine has not sent Blaze any cards, gifts, letters, or essential items except for a birthday card and "a couple of gifts" in 2022 and some clothes in July 2021. Paulette has taken Blaze to medical appointments while he has been in her care, none of which were attended by Jasmine.

### (iii) Jasmine and Benjamin

Jasmine testified that she has a bond with Blaze and they love each other and expressed the following concerns regarding Blaze's current care:

> That he's just not thriving as a young boy. He's just closed up. It's either come to the school or he's at home. Like I asked if he had any friends in the neighborhood, does he ever go and play with anyone? He says he goes and plays with Nathan, and that's like his closest peer brother, one of the same age group. He's gaining weight because he's not active, he's not doing anything.

Benjamin testified that Jasmine is a "very good mother" to Blaze, that Blaze is "very close to her," and that they have "a really strong bond."

### 4. JUVENILE COURT ORDER

In August 2022, the juvenile court found that the State had provided clear and convincing evidence that Blaze was a child within the meaning of § 43-292(1), (2), (6), and (7) and that termination was in Blaze's best interests. The juvenile court specifically found that the testimony provided by Jasmine and Benjamin was

> not credible, and vastly differed from that of [Paulette] who provides daily care [for] Blaze. For example, [Benjamin] testified that he has observed approximately fifty (50) different cards and letters [Jasmine] has sent Blaze since he was placed in [Paulette's] care. [Paulette], however, testified she had never received more than an occasional card for Blaze from [Jasmine], and certainly not 50 cards over the course of the time Blaze had been placed with her. Likewise, [Jasmine] testified she had provided approximately $2300-$2500 for the care of Blaze since he entered foster care and had been placed with

[Paulette]. Again, [Paulette] was not aware and did not receive money or any form of financial support from [Jasmine] for the care of Blaze since he was placed in her home[.]

## III. ASSIGNMENT OF ERROR

Jasmine contends that the juvenile court erred in terminating her parental rights pursuant to § 43-292(1), (2), (6), and (7) and that termination is not in Blaze's best interests.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

## V. ANALYSIS

### 1. STATUTORY BASIS FOR TERMINATION

Jasmine contends that the juvenile court erred in terminating her parental rights pursuant to § 43-292(1), (2), (6) and (7).

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

Section 43-292(7) grants termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Kenna S., supra.*

Here, Blaze has been in foster care since January 3, 2020. At the time of the July 15, 2021, filing of the motion for termination of Jasmine's parental rights, Blaze had been in out-of-home placement for 17 consecutive months. On the first day of the termination hearing in late October 2021, Blaze had been in out-of-home placement for 21 consecutive months. On the final day of the termination hearing, in April 2022, Blaze had been in out-of-home placement for 27 consecutive months.

Because we find that there was clear and convincing evidence that Blaze remained in out-of-home care for 15 or more months out of the most recent 22 months, we need not consider whether termination was proper based on the remaining statutory grounds. If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.*

## 2. BEST INTERESTS

Jasmine next argues that the juvenile court erred in finding that termination of her parental rights was in Blaze's best interests.

In addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *In re Interest of Jahon S., supra*. There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interest analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.*

In cases where termination of parental rights is based on § 43-292(7), the Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In such a situation, because the statutory ground for termination does not require proof of such matters as abandonment, neglect, unfitness, or abuse—as the other statutory grounds require—proof that termination of parental rights is in a child's best interests requires clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *In re Interest of Aaron D., supra.*

Here, Jasmine apparently did not learn that Blaze had been removed by the State for over two months and, once she was informed of the removal in March 2020, Jasmine admittedly made no attempt to contact DHHS until May 2021. Further, although Jasmine testified that she had not visited Blaze since September 2021, she did not raise any concern with a lack of visitation until her March 2022 testimony. During the entire course of this case, Jasmine attended only 16 visits with Blaze during a more than two-year period with her first visit not taking place until May 2021 when she finally contacted the State. During Blaze's first visit with Jasmine, he was described as being "scared about going with a stranger" and, after visits with Jasmine, Blaze displayed negative behaviors described by Paulette as "kind of bratty" and "kind of hyper." We defer to the juvenile court's determination that Jasmine and Benjamin's testimony regarding Jasmine providing letters, cards, and money for Blaze's care was not credible.

Notwithstanding the court-ordered requirements designed to reunite Jasmine with Blaze, Jasmine failed to pursue the vast majority of them and made minimal effort to work with the State to seek reunification. Further, the evidence established that at the time that Blaze was initially placed with Paulette in January 2020, he faced various struggles including the inability to read, limited school experience, and limited interaction with other children. However, at the time of the

termination hearings, Blaze had adjusted very well to the consistent day-to-day care provided by Paulette. Blaze is now developmentally on track, enjoys reading, has friends, and enjoys age-appropriate activities such as drawing, playing with Legos, taking karate lessons, and playing basketball and football. Blaze has clearly thrived during his placement with Paulette. In short, during the more than two years that Blaze has been in out-of-home placement, Jasmine has not placed herself in a position to parent Blaze. Jasmine is currently an unfit parent and there is no indication that this will change in the foreseeable future. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. See *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). Accordingly, we hold that the juvenile court did not err in finding that termination of Jasmine's parental rights was in Blaze's best interests.

## VI. CONCLUSION

Having found that the evidence was sufficient to support the statutory basis for termination pursuant to § 43-292(7) and that termination was in Blaze's best interests, we affirm the juvenile court's order terminating Jasmine's parental rights.

AFFIRMED.