IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF LENNON G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LENNON G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BOBBIE G., APPELLANT.

Filed October 24, 2023.    No. A-23-355.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Angela W. McClure, of Kotik & McClure Law, for appellant.

Tara A. Parpart, Deputy Lancaster County Attorney, for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Bobbie G. appeals from an order of the separate juvenile court of Lancaster County, terminating her parental rights to her daughter, Lennon G. Upon our de novo review of the record, we affirm the juvenile court's order.

## STATEMENT OF FACTS

Bobbie is the biological mother of Lennon, born in October 2021. Though Lennon's biological father completed genetic testing in November 2022 and the State filed a petition for paternity, efforts to serve him have been unsuccessful. Thus, we only discuss Lennon's alleged father as necessary to the resolution of the current appeal by Bobbie.

- 1 -

Lennon was born 4 weeks prematurely and while in the neonatal intensive care unit (NICU), her urine screen tested positive for amphetamine. Though Bobbie had refused a drug screening several times, NICU staff performed a drug screen on Lennon due to Bobbie receiving late prenatal care, acting erratically, and stating that she planned to remove Lennon from the NICU before the baby had been properly discharged. Lennon's umbilical cord was also sent for lab testing and a week later returned a positive result for amphetamine and methamphetamine.

A petition was filed on October 12, 2021, to adjudicate Lennon pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based on Lennon testing positive for amphetamine and methamphetamine when no substance that would produce such results was part of any medical intervention during the delivery process; Bobbie's actions during visits to the NICU which were indicative of substance use; and Bobbie's history of convictions for possession of a controlled substance and driving under the influence of substances; all of which placed Lennon at risk of harm. A motion for ex parte temporary custody was also filed and granted on October 12. At a hearing on October 20, temporary legal custody of Lennon was placed with the Department of Health and Human Services (the Department). Lennon has remained out of the home since she was removed.

The State filed an amended petition on November 8, 2021, which alleged that Bobbie had a history of convictions for attempted possession of controlled substances, but otherwise reasserted the same allegations contained in the original petition. On November 11, the juvenile court entered an order appointing Bobbie a Guardian ad Litem (GAL) though the reason for the appointment is unclear from our record on appeal. After a contested trial, Lennon was adjudicated on November 19. As part of the court's adjudication order Bobbie was required to refrain from the use of controlled substances, cooperate with random drug testing, and cooperate with a co-occurring evaluation and a neuropsychological evaluation as arranged by the Department. The Department was ordered to provide Bobbie with any treatment or services recommended by the evaluations.

The juvenile court entered a dispositional plan on February 23, 2022, which required that Bobbie refrain from the use of controlled substances, cooperate with random drug testing, cooperate with a psychological evaluation and parenting assessment, cooperate with a neuropsychological evaluation, participate in supervised parenting time, participate in family support services, and maintain safe and stable housing and a legal means of support. The Department was again ordered to provide Bobbie with any treatment or services recommended by the evaluations.

Three review hearings were held on April 11, 2022; August 17; and January 9, 2023. The goals of the court-ordered dispositional plan have been largely consistent throughout the case. After the review hearing on April 11, the juvenile court also ordered that Bobbie cooperate with a child-parent psychotherapy dyadic assessment and submit to a hair follicle test within 7 days. After the review hearing on January 9, the court made an additional order that Bobbie would need to complete 2 full weeks of consistent drug testing before the Department was again required to send out parenting time referrals to providers.

On February 9, 2023, the State filed a motion for termination of Bobbie's rights to Lennon, alleging that statutory grounds to terminate existed pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016), and alleging that termination was in the best interests of Lennon.

The termination trial was held on April 20, 2023. At the start of the hearing, Bobbie's GAL requested a continuance, indicating that Bobbie had reportedly been injured in a farm accident and was still suffering pain. Bobbie's attorney joined in the request for a continuance and Bobbie thereafter arrived late for the hearing. The juvenile court continued the termination trial to the following week "out of an abundance of caution. . ."

The continued termination trial was held on April 25, 2023. Bobbie did not appear for the hearing. KinDale Andreen, Lennon's Department caseworker since December 2021, provided testimony and the Department's case plans were entered into evidence. The following evidence was adduced.

*Substance Use.*

Bobbie's substance use and resistance to drug testing has been an issue throughout the case. In January 2022 she told her family support worker, "I will make [the provider] cry before they get a UA (urine analysis) from me." Bobbie was arrested on February 17, 2022, and released the following day for driving with a revoked license due to a previous DUI. A review of her criminal record reflects that Bobbie was arrested for her third DUI in December 2018.

Bobbie was also ordered to complete a hair follicle test at the review hearing in April 2022. A drug testing coordinator reached out to Bobbie a few days after Andreen sent a testing referral, and Bobbie indicated that she was busy and would call the coordinator back. Bobbie did not contact the coordinator again to schedule a hair follicle test and the referral was closed after 1 month without engagement.

Despite being ordered to participate in random drug testing since November 2021, Bobbie did not begin any form of drug testing until June 17, 2022. Since June 2022 she has been tested only nine times and all nine tests have been lab confirmed positive for methamphetamine and amphetamine. Bobbie had been offered approximately 216 drug tests throughout the 18 months of the case.

Bobbie maintains that she does not use any illegal substances and denies there is any way that her drug tests are positive for methamphetamine. A review of the Department case plan dated December 12, 2021, reflects that Bobbie's denial of substance use has been present since the start of the case. Bobbie attributed Lennon's positive drug tests at birth to the NICU staff putting drugs in Lennon's urine, drugs being present in the blood transfusion she was given at the hospital, and Lennon's alleged father drugging Bobbie without Bobbie's knowledge. Bobbie reported to Andreen that she has multiple sclerosis and fibromyalgia and has provided Andreen with a list of her medications. However, Andreen testified that no medication could result in a false positive lab test for methamphetamine.

Due to her lack of consistency, Bobbie has had several drug testing providers. When Bobbie first began drug testing in June 2022, Jenda Family Services was administering her drug tests. However, Bobbie grew to distrust the worker at Jenda, believing that the worker was lying about calling Bobbie to alert her to test. Bobbie then requested that Pathfinder Support Services provide her drug testing.

The Department made that referral and Bobbie participated in a few tests with Pathfinder. In August 2022, the workers at Pathfinder were concerned that Bobbie was tampering with her urine tests, as the temperature of her tests were above 100 degrees, which Andreen noted at trial is

"near impossible" to come out of a human body. When Bobbie was questioned about the validity of her tests, she stated that she would no longer participate with Pathfinder. Pathfinder also communicated to the Department that the company would no longer work with Bobbie due to her volatile behaviors and accusations against their workers. Bobbie then participated in a few tests with Owens and Associates but was discharged due to her lack of consistency with testing.

Bobbie was then referred back to Jenda and was allowed to participate in off-site drug testing. However, Bobbie began to accuse Jenda workers of tampering with the cups brought to her for her tests, stating that the cups already had methamphetamine in them and that workers were not following procedures. In November 2022, Bobbie's off-site testing privileges were revoked by Jenda in an effort to provide Bobbie with more structure and to protect their workers from Bobbie's claims. Her referral for drug testing with Jenda remains active, though Bobbie has not participated in a drug test since February 10, 2023.

*Incomplete Evaluations.*

On January 6, 2022, Bobbie participated in a co-occurring evaluation at Jenda Family Services. A copy of the evaluation was attached to the Department case plan dated February 8, 2022. Bobbie was an hour late to the appointment, was unable to focus, and was unable to give answers regarding her substance use and psychiatric history. Bobbie reported that she suffers from a traumatic brain injury due to being hit by a train in 1997. She was diagnosed with unspecified trauma and stressor related disorder and histrionic personality disorder. The evaluator noted that the evaluation would be incomplete and, "due to Bobbie continually redirecting and not answering direct questions, she will not be given a substance use diagnoses at this time." It was also unclear to the evaluator if Bobbie was being affected by her traumatic brain injury, her personality disorder, or other major mental health concerns. The incomplete co-occurring evaluation recommended that Bobbie participate in frequent drug testing, a medication evaluation, a full psychological evaluation, and a parenting assessment. The medication evaluation was recommended to occur after the psychological evaluation.

Also in the February 2022 case plan, is a note that the co-occurring evaluator "indicated these recommendations would be best done after [Bobbie] completes a neuropsychological evaluation." The statement that the other evaluations and assessments should occur after a neuropsychological evaluation does not appear in the attached copy of the co-occurring evaluation. Andreen believed she received this note from the evaluator via email. The February 2022 case plan also includes the note that Bobbie's attorney at the time had indicated that Bobbie "not continue these evaluations until [Bobbie's] sobriety can be assessed."

Prior to receiving the recommendations from the co-occurring evaluation and the evaluator via email, Andreen called Remedy Counseling to check their availability for a psychological evaluation and parenting assessment. Remedy Counseling indicated that they would not have availability until March 2022 and that Bobbie would need to set up the appointment herself. Bobbie did not do so after prompting from Andreen. As a result of the additional recommendation by the co-occurring evaluator that all other evaluations would be best done after the completion of a neuropsychological evaluation, the Department did not make a referral for a psychological evaluation or a parenting assessment because a neuropsychological evaluation had yet to be completed by Bobbie.

On January 28, 2022, Bobbie participated in a neuropsychological evaluation at the Madonna Rehabilitation Hospital in Lincoln. This evaluation was attached to the Department's case plan dated April 4, 2022. Bobbie again was an hour late and was "minimally cooperative" during the testing, refusing to wear a face covering and demanding a snack. The results of the testing were inconclusive as the evaluator was not able to complete the level of testing generally performed, despite spending 4 hours with Bobbie. Bobbie was "easily distracted, tangential, highly anxious and emotionally labile." The neuropsychological evaluation had to be completed via a Zoom meeting, however Bobbie was late and was preoccupied while on Zoom. The evaluator cancelled the Zoom session after 35 minutes of the session had elapsed without the testing commencing.

The incomplete neuropsychological evaluation recommended that Bobbie refrain from substances in concert with frequent drug testing, individual counseling, and psychiatric oversight. No other recommendations for cognitive rehabilitation could be provided given Bobbie's possible substance use. Bobbie was encouraged to return for another neuropsychological evaluation after her psychological factors were stabilized. Andreen testified at trial that a second neuropsychological evaluation was not set up because Bobbie needed to participate in drug testing and to show a level of sobriety in order to move forward with the evaluations.

In August 2022, Bobbie had completed five drug tests and Andreen contacted the evaluator at Jenda to inquire as to whether she would complete an updated co-occurring evaluation for Bobbie. The evaluator responded that due to Bobbie's "inappropriate behaviors and inability to complete her evaluation questions in a timely manner, she will not be able to attend at Jenda Family Services. . ." The evaluator reiterated that Bobbie should obtain a parenting assessment and a full neuropsychological evaluation.

At that time Andreen offered to reach out to another provider, but Bobbie indicated that she wanted to contact a provider for a co-occurring evaluation herself. Bobbie later told Andreen that she had set up a substance use evaluation, not a co-occurring evaluation, through a particular provider. When Andreen contacted that provider, he stated that Bobbie did not have an appointment and had not completed any evaluation with him.

In December 2022, Bobbie contacted Associates in Counseling and Therapy about participating in an updated co-occurring evaluation during a meeting with her attorney and Andreen. However, Bobbie did not complete any paperwork or move forward with the evaluation.

*Parenting Time.*

A referral for Bobbie's supervised parenting time through Pathfinder Support Services was made on October 13, 2021. Bobbie was to participate in 3-hour parenting time sessions, 5 days a week at her home. On December 8, Bobbie was discharged from Pathfinder due to missing one third of her parenting time with newborn Lennon. Pathfinder workers also expressed concerns to Andreen regarding Bobbie's mental health and substance use because Bobbie would send inappropriate messages to workers throughout the night. These long text messages were perceived by the workers to be ramblings, as Bobbie would state that she did not trust her attorney, that she believed Lennon's alleged father was locking her out of her home, and that the hospital had drugged her. Bobbie would also make statements indicating suicidal ideations, which led to multiple police contacts.

On December 9, 2021, Bobbie began participating in supervised parenting time through A Blessing of Hope. Bobbie continued to struggle with consistently in attending her parenting time with Lennon, missing 7 out of the offered 20 sessions in January 2022. When Bobbie did attend parenting time, Andreen described her as very nurturing and prepared with toys, formula, diapers and wipes, blankets, and clothing.

In February 2022, Bobbie's parenting time was moved to A Blessing of Hope's visitation center due to frequent incidents of Lennon's alleged father being in the home. Andreen testified that Bobbie was ordered by the juvenile court not to let unauthorized individuals in the presence of Lennon, which presumably included Lennon's alleged father. Though the reason why Lennon's alleged father was an unauthorized individual is unclear from our record, Bobbie did indicate to Andreen that domestic violence was occurring between the two. Andreen offered Bobbie domestic violence services at Friendship Home, but Bobbie responded that she would be unable to participate because she could not leave her dog home alone.

On February 8, 2022, Andreen received an email from Bobbie's visitation worker who reported that as she was transporting Bobbie and Lennon back from the visitation center, Bobbie became agitated about the perceived lack of support from case professionals and began to scream at the visitation worker. Bobbie's yelling caused 4-month-old Lennon to start crying and Bobbie screamed for the worker to pull over so that Bobbie could give Lennon her pacifier. The worker asked Bobbie to wait so that she could pull the car over, while Bobbie continued to scream for the car to stop. Bobbie then opened the car door as the worker was driving at 40 miles per hour and tried to jump out of the moving vehicle. The worker was able to get Bobbie back inside the car and drop her and Lennon off without a safety incident. Also in February, Bobbie's parenting time was reduced from five sessions a week to two due to persistent cancellations and absences.

During the first week of March 2022, Bobbie did not confirm either of her two visits with Lennon and they did not occur. Bobbie was discharged from A Blessing of Hope on March 8, 2022, because she became aggressive toward the visitation worker and had sent her threatening text messages. The worker indicated that she no longer felt safe working with Bobbie.

A meeting to discuss parenting time policies and regulations was held on March 25, 2022. Bobbie's rules and goals were listed by Andreen and sent to all parties. Bobbie began participating in parenting time with Priority Family Services with three offered visits a week. After the March meeting, Bobbie's participation in parenting time improved with her attending eight of the offered 13 visits in April and 10 out of the offered 13 visits in May.

In June 2022, Bobbie's participation in parenting time declined to four out of the 12 offered visits. Bobbie also began to send Andreen erratic and rambling text messages and emails. Because of Bobbie's behavior, the Department required that Bobbie drug test prior to parenting time with Lennon beginning on June 13, 2022. Andreen testified that Bobbie was allowed to have a visit with Lennon if she tested before her scheduled visit, even if the test was positive for substances. As a policy, the Department does not disallow parents from having visits with their children if they are testing positive for substances, especially if the visits are supervised. Bobbie participated in three drug tests and three sessions of parenting time in July, two drugs tests and two sessions of parenting time in August, and one drug test and one session of parenting time in September. In the summer of 2022, Bobbie also stopped consistently participating in monthly family team meetings and engaging with family support.

Bobbie was scheduled to have parenting time with Lennon on the date of her first birthday in October 2022. Because Bobbie did not participate in a drug test or confirm the visit that morning, the session did not occur.

Bobbie was discharged from Priority Family Services on October 5, 2022. In the 2 months prior, Bobbie had participated in only one visit and was directing "constant verbal abuse" at the visitation worker and her supervisor. Bobbie's aggressive and conspiratorial behaviors had become too difficult for the workers to manage.

Andreen testified that Bobbie would also make degrading comments regarding Lennon's foster parents during her parenting time. On occasion Bobbie tried to provide things to the foster family for Lennon, such as toys and clothes, but was later told by the Department to stop. The items provided by Bobbie were dirty and there were concerns that if Bobbie was using drugs, the toys and clothes being given to the foster family may have substances on them. Bobbie also accused the foster family of stealing the items from her.

During a family team meeting on October 6, 2022, Andreen stated that it was necessary for Bobbie to complete 2 full weeks of consistent drug testing before the Department would send out another parenting time referral, as Bobbie had been discharged from three different agencies due to her volatile behavior and inconsistent attendance. The Department case plan dated November 10, 2022, states, "The department would like to see [Bobbie] make an honest effort at being consistent with drug testing before asking another agency to supervise visits. . ." Andreen testified that all parties and case professionals had agreed and Andreen moved forward with the plan.

Since October 5, 2022, there has been no active referral for parenting time, though the juvenile court's order relating to 2 weeks of testing was not made until January 2023. Bobbie has not had parenting time with Lennon since September 28, 2022.

*Lennon's Needs.*

In March 2022, Lennon had an assessment with the Nebraska Early Development Network where she was referred to weekly occupational therapy and physical therapy. After feeding therapy, Lennon learned how to swallow properly, and after physical therapy, Lennon learned how to roll over, crawl, and walk. At the time of trial Lennon had been discharged from her therapies.

Andreen testified that children need permanency so that they feel safe and comfortable knowing that they are wanted. Andreen does not anticipate that Bobbie will reunify with Lennon in the near future given her lack of case participation. Andreen believes it is in Lennon's best interests to have Bobbie's parental rights terminated because Bobbie is not consistently participating in any services and has not been able to demonstrate any form of sobriety. Bobbie has shown no responsibility for her positive drug tests, has displayed volatile behaviors, and has made degrading comments.

*Court Assistant Testimony.*

An office assistant in the juvenile court was briefly called by the court to testify. She testified that Bobbie appeared in the waiting room of the juvenile court approximately 20 minutes after the continued termination trial had begun. The office assistant spoke with Bobbie, who indicated that she had gone down to the courtroom and that no one was inside. Bobbie confirmed that no one was inside the courtroom even after the office assistant clarified the courtroom's

number. Bobbie then sat down in the waiting room for a couple of minutes and subsequently left the courthouse.

The juvenile court noted for the record that the courtroom door has a window in it and the door was not locked. There were approximately 15 people inside the courtroom since the start of the trial and no recess had been taken that day.

*Termination Order.*

On April 27, 2023, the juvenile court entered an order terminating Bobbie's rights to Lennon. The court found that the State had met its burden of proving substantial and continuous neglect, and that Lennon had been in out-of-home placement for 15 or more months out of the most recent 22 months, pursuant to § 43-292(2) and (7). The court also found that pursuant to § 43-292(6), Bobbie also failed to correct the conditions that led to her child being adjudicated under § 43-247(3)(a). The court further found that Bobbie was an unfit parent and that it was in the best interests of Lennon to have Bobbie's parental rights terminated.

Bobbie appeals.

## ASSIGNMENTS OF ERROR

Bobbie assigns that the juvenile court erred in (1) not allowing her more time to work toward reunification when case services were not provided by the Department, and (2) finding that termination of her parental rights was in Lennon's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

## ANALYSIS

*Statutory Grounds for Termination.*

The juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2), (6), and (7). Bobbie concedes that statutory grounds existed under § 43-292(7) to support termination of her parental rights. However, Bobbie argues that she was unable to "beat the 15 out of 22-month clock because of [the Department's] refusal and negligence in not setting up individual therapy, parenting time referrals, medication evaluation, and additional assessments." Brief for appellant at 14. Bobbie also argues that because she was not provided with the necessary services to put herself in a position to safely parent Lennon, the juvenile court erred in finding termination was appropriate under § 43-292(2). Similarly, Bobbie argues that because she was not provided reasonable efforts, the juvenile court's finding that § 43-292(6) was proven was in error.

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any

specific fault on the part of a parent. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *Id.*

Here, Lennon has been in out-of-home placement for 15 or more months of the most recent 22 months. Lennon was removed from Bobbie's care on October 12, 2021. The State filed the motion for termination of parental rights on February 9, 2023, and the termination trial was held in April 2023. Lennon remained out of the home since her removal from the hospital in October 2021 following her birth. Lennon has never been placed in her mother's home. At the time of trial, Lennon had been in out-of-home placement for 18 months. Thus, the statutory requirement for termination under § 43-292(7) has been met.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Because the State presented clear and convincing evidence that Lennon had been in an out-of-home placement for 15 or more months of the most recent 22 months, statutory grounds for termination of Bobbie's parental rights exists. We will further address Bobbie's claim that she was not provided adequate services in the following section.

*Best Interests and Unfitness.*

Bobbie assigns that the juvenile court erred in finding that it was in Lennon's best interests to terminate Bobbie's parental rights. In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. § 43-292; *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). Because the parent's right to raise his or her children is constitutionally protected, the court may terminate parental rights only when the State shows that the parent is unfit. *In re Interest of Isabel P. et al., supra*. There is a rebuttable presumption that the best interests of the children are served by having a relationship with their parent. *Id*. This presumption is overcome only when the State has proved that the parent is unfit. Id. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id*.

Bobbie argues that she was not provided a sufficient opportunity to reunify with Lennon and thus termination of Bobbie's parental rights was not in Lennon's best interests. Bobbie asserts that her compliance with the dispositional plan was hindered by the lack of effort provided by case professionals.

Throughout the case, the juvenile court ordered Bobbie to participate in a neuropsychological evaluation, a co-occurring evaluation, a psychological evaluation, a parenting assessment, and a child-parent dyadic assessment. Additionally, the Department was ordered to provide Bobbie with any treatment or services recommended by the evaluations. In early 2022, the Department did arrange for a co-occurring evaluation, however, the evaluation was not completed due to Bobbie's lack of cooperation. A neuropsychological evaluation was also arranged by the

Department, but again the evaluation was incomplete due to Bobbie's behavior and lack of cooperation. These incomplete evaluations recommended Bobbie have a medication evaluation, psychological evaluation, parenting assessment, individual counseling, and psychiatric oversight. Andreen testified that Bobbie's co-occurring evaluator recommended, via email, that all other recommended evaluations come after a completed neuropsychological evaluation. The Department attempted to arrange for a second co-occurring evaluation, however, Bobbie failed to contact the provider to schedule the appointment and failed to find another evaluator after she asked to arrange her own evaluation. A second neuropsychological evaluation was not set up as Bobbie needed to participate in drug testing and show a level of sobriety to be able to move forward with the evaluation. Because a neuropsychological evaluation was not completed, the other recommended evaluations and services were not provided.

The record clearly shows Bobbie's general lack of consistent participation throughout the case. Of the 216 drug tests she was offered throughout the case, she completed only nine, all of which were lab confirmed positive for methamphetamine and amphetamine. Though Bobbie was attentive when she attended parenting time sessions with Lennon, she struggled to meaningfully participate in visitation with the child. The height of her parenting time attendance occurred in May 2022 with her attending 10 out of the offered 13 visits, but her attendance soon dropped to only four visits in June, three in July, two in August, and one in September. Bobbie did not attend parenting time on Lennon's first birthday in October. Parenting time was thereafter discontinued as a result of Bobbie's failure to comply with drug testing. In the summer of 2022, Bobbie also stopped consistently participating in monthly family team meetings and engaging with family support. Bobbie did not attend the trial after it had been continued at her request, despite arriving at the courthouse while the continued trial was underway.

Bobbie has also exhibited a lack of insight and responsibility. She has never admitted to substance use, despite Lennon testing positive for methamphetamine and amphetamine at birth. She was discharged from three drug testing service providers after failing to test consistently and making accusations that the workers were tampering with her drug tests. Bobbie was likewise discharged from three parenting time service providers for acting aggressively towards workers and sending threatening messages. Bobbie has similarly been hostile to Andreen and to Lennon's foster parents. Attached to the Department's case plans are pages of Bobbie's combative communications to case professionals. Bobbie's sense of victimization once put Lennon in danger, when Bobbie tried to jump out of a moving vehicle after growing upset with a visitation worker while Lennon was in the backseat.

Bobbie argues that she should have been given a longer time to rehabilitate herself since many of the recommended services were not provided to her. However, many of these services could not be completed due to her lack of cooperation in the evaluations, her lack of cooperation with the Department caseworker and other service providers, and her continued substance use. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015). Based on the evidence presented, there has been minimal change in Bobbie's behavior over the course of the case and based on her inability to engage with services or case professionals in a productive manner, she is unlikely to change in the

future. The case plan goals have remained consistent throughout the case and have not been met, and there has been no improvement in Bobbie's ability to parent.

Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). Lennon has been in foster care since leaving the hospital in October 2021 after her birth. She deserves stability in her life and should not be suspended in foster care when Bobbie is unable to rehabilitate herself. Accordingly, we find there was clear and convincing evidence to show that Bobbie was unfit and that terminating her parental rights was in Lennon's best interests.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds for termination of Bobbie's parental rights existed under § 43-292(7) and that termination of her parental rights is in the best interests of Lennon. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.