IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ALFREDO F. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ALFREDO F. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

TIFFANY F., APPELLANT AND CROSS-APPELLEE, AND
ALFREDO D., APPELLEE AND CROSS-APPELLANT.

Filed August 19, 2025.    Nos. A-24-910 through A-24-913.

Appeals from the County Court for Morrill County: PAUL G. WESS, Judge. Affirmed.

Stacy C. Bach, of Nossaman Petitt Law Firm, P.C., L.L.O., for appellant.

Rebecca R. Chasek, Dawes County Public Defender, for appellee Alfredo D.

No appearance for appellee State of Nebraska.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Tiffany F. appeals from four separate orders of the Morrill County Court sitting as a juvenile court, terminating her parental rights to her four children. Alfredo D. cross-appeals from the orders which relate to two of the children. We have consolidated the juvenile cases and upon our de novo review of the record, we affirm the juvenile court's orders.

- 1 -

## II. STATEMENT OF FACTS

### 1. PROCEDURAL BACKGROUND

Tiffany and Alfredo are the parents of Alfredo F., born in October 2019, and Davina F.D., born in July 2021. Though Alfredo F. has a different last name than that of his father, for the sake of clarity, we will refer to Alfredo F. as "Alfredo Jr." and Alfredo D. as "Alfredo Sr." Tiffany is also the mother of Daniel F., born in February 2013, and Gabriel F., born in June 2014. Daniel's and Gabriel's respective fathers are not a part of the appeal before us now, and they will not be discussed further.

In August 2022, separate petitions were filed with the Morrill County Court, sitting as a juvenile court, to adjudicate Daniel, Gabriel, Alfredo Jr., and Davina pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based on the actions of Tiffany and to adjudicate Alfredo Jr. and Davina based on the actions of Alfredo Sr. Specifically, the petitions alleged that Alfredo Jr. was born with amounts of amphetamine in his body and that in prenatal medical visits and shortly after Alfredo Jr.'s birth, Tiffany allegedly ignored, and acted against, medical advice. The petitions further alleged that Tiffany and Alfredo Sr. had a history of domestic violence which took place in the presence of the children, and that Tiffany had a history of substance abuse issues and had failed to provide and protect her four children. Daniel, Gabriel, Alfredo Jr., and Davina were removed from the parental home on August 23, 2022. The children have remained out of Tiffany's and Alfredo Sr.'s home since their removal.

Amended petitions were filed on September 7, 2022, which added an allegation that the children were without proper parental support through no fault of their parents (although the allegation that the children lacked proper parental care by reason of the faults or habits of their parents remained in the amended petition). The amended petition otherwise contained identical allegations set forth in the original petitions. That same day, the juvenile court found that Daniel, Gabriel, Alfredo Jr., and Davina were adjudicated under § 43-247(3)(a).

The juvenile court appears to have entered its dispositional orders in November 2022, though the orders' details are unclear from our record on appeal. Case plans presented by the Nebraska Department of Health and Human Services (the Department), dated May 2024, included identical goals for Tiffany and Alfredo Sr.: each parent was to provide a safe and appropriate home as evidenced by parenting in a sober manner, to utilize a healthy support system, to demonstrate appropriate parenting skills, and Tiffany was to address and manage her mental health. Our record contains a transcript from only one review hearing regarding Alfredo Jr., held on June 7, 2023, and one regarding Gabriel, held on June 5, 2024.

On May 9, 2024, the State filed separate motions for termination of Tiffany's and Alfredo Sr.'s parental rights. The State alleged that statutory grounds to terminate Tiffany's parental rights existed pursuant to Neb. Rev. Stat. § 43-292(2), (4), and (6) (Reissue 2016) regarding Gabriel, and that statutory grounds to terminate existed pursuant to § 43-292(2), (4), (6), and (7) regarding Daniel. The record is unclear why the State did not allege grounds under subsection (7) regarding Gabriel. The State alleged that statutory grounds to terminate Tiffany's and Alfredo Sr.'s parental rights existed pursuant to § 43-292(2), (4), (6), and (7) regarding Alfredo Jr. and Davina. The State also alleged that termination of Tiffany's and Alfredo Sr.'s parental rights was in their respective children's best interests.

## 2. TRIAL

The termination trial was held over the course of 2 days in August 2024. The following evidence was adduced.

### (a) Case Origins

Courtney Armstrong testified that she was the family's caseworker during a prior juvenile case from August 2019 until March 2021. The prior case initially began as a voluntary case involving Daniel and Gabriel (the only children born at the time) regarding concerns that Alfredo Sr. was physically abusing the children. When Alfredo Jr. was born in October with methamphetamine in his system, the three children were removed from the home. A juvenile petition was then filed and the children were adjudicated in November.

The Department offered supervised parenting time, Intensive Family Preservation, and referrals to parenting classes and support groups. Tiffany wore sweat patches during this prior juvenile case and tested positive for "THC" throughout the case and for methamphetamine three times from February to June 2020. Armstrong testified that Tiffany attempted to take advantage of an intensive outpatient program for her substance use and met with three different providers but was unable to find a good fit.

Daniel, Gabriel, and Alfredo Jr. were ultimately returned to the home in May 2020 and the juvenile case was closed in March 2021. Armstrong testified that though the juvenile court reunified the children with Tiffany and Alfredo Sr., "the department did not agree with that decision."

Katelyn Templeton, the family's caseworker since February 2022, testified that prior to the petitions being filed in this case, Tiffany and Alfredo Sr. worked with her on another voluntary case that arose from concerns around substance use and domestic violence in the home. All four children were removed from the home for approximately 30 days while Tiffany and Alfredo Sr. implemented their voluntary case plan. Templeton reported that both parents were receptive to the case plan and did well engaging in the services provided. The children were subsequently returned to the home with a safety plan and family support in place. Templeton testified that during the voluntary case, both parents would accuse each other of using controlled substances, but neither parent acknowledged their own use.

On August 23, 2022, a family support worker informed Templeton that a physical altercation had occurred between Alfredo Sr. and Tiffany in the home and in the presence of the children. Templeton interviewed Daniel and Gabriel at their school about the altercation. According to Templeton, Daniel told her that Alfredo Sr. grabbed Tiffany from behind and held her down against a mattress and kicked her several times in the stomach. Gabriel reported that he was in the shower at the time and did not hear or see anything. That incident ended the voluntary case, and all four children were removed from the parental home that same day. The juvenile petitions were filed on August 25. The children have remained out of Tiffany's and Alfredo Sr.'s home since their removal.

The Department developed a case plan for each parent. Both parents were ordered to complete a drug and alcohol evaluation and follow the recommendations; work with informal and formal supports to identify positive activities, access community resources, and develop a healthy and positive support system; demonstrate safe and appropriate parenting by following all

recommendations of the case plan, family team meetings, and court orders, and verbalizing the importance of ensuring the children's safety; weekly individual counseling; medication management as needed; attend three Alcoholics/Narcotics Anonymous meetings per week; and complete the Circle of Security parenting course. In addition, each parent was to complete and follow the recommendations of a parent capacity assessment and submit to random chemical testing through sweat patches. Individually, Tiffany was to obtain stable housing and maintain her medication dosage, and Alfredo Sr. was to complete the fatherhood specific parenting courses and attend the men's trauma group.

### (b) Substance Use

According to Templeton, controlled substance use by both parents was a concern throughout the voluntary case as well as the juvenile case. Daniel, Gabriel, and Alfredo Jr. had all tested positive for methamphetamine at birth. Lori Rodriquez-Fletcher, a licensed independent mental health practitioner, conducted trauma assessments for both Daniel and Gabriel in October 2023. During his trauma assessment, Gabriel told Rodriquez-Fletcher that he had observed both Tiffany and Alfredo Sr. "smoke out of pipes."

As noted above, both parents were ordered to wear sweat patches. Tiffany's results were subject to follow-up urine analysis due to a particular prescription, which indicated the presence of amphetamine on her sweat patch test results. Templeton testified that both parents tested positive for controlled substances, predominately methamphetamine and "THC," throughout the case. While Tiffany was able to obtain negative test results twice for extended periods of time (from February 17, 2023, to July 8, 2023, and from August 9, 2023, to March 22, 2024) she continued to relapse, most recently as of July 2024. Tiffany attributed her positive tests to "exposure" from spending time with methamphetamine users. Alfredo Sr. also tested positive throughout the case, though he denied using any controlled substances and did not explain the positive tests to Templeton.

Templeton was unsure if Tiffany ever completed her drug and alcohol evaluation, though she testified that Alfredo Sr. did not complete his evaluation. Templeton also noted that the positive drug test results was one of the reasons why Tiffany's and Alfredo Sr.'s parenting time with the children had never progressed to unsupervised visits.

### (c) Parenting Time

Templeton testified that at the start of the case, Tiffany was offered 15 hours of parenting time a week. Overall, Tiffany enjoyed her parenting time and regularly participated, though her attendance could be "spotty" due to her unpredictable work schedule at a local hotel. Templeton reported that during parenting time Tiffany prepared homecooked meals for her children, implemented a bedtime routine, helped the children with their homework, and engaged them through reading and playing outside.

In June 2023, 2 to 3 hours of semi-supervised parenting time per week was added. But in late July 2023, Tiffany tested positive for amphetamine, methamphetamine, and cocaine, and her semi-supervised hours were revoked. In September 2023, Tiffany progressed to 4 hours of semi-supervised time until she tested positive in May 2024 and her parenting time again reverted to fully supervised.

Tiffany never progressed to having unsupervised or overnight parenting time. Templeton testified that the Department had too many concerns regarding Tiffany's substance use and her continuing to allow Alfredo Sr. around her. Daniel and Gabriel did not report to Templeton that they felt comfortable enough to have an overnight visit with Tiffany.

Alfredo Sr. was offered 12 hours of supervised parenting time a week with Alfredo Jr. and Davina. Templeton described Alfredo Sr. as interactive during his parenting time, frequently taking Alfredo Jr. and Davina to the park or library. Alfredo Sr. would often cancel his parenting time on Friday, usually because he was not back from a job at a construction worksite. Alfredo Sr. had never progressed beyond supervised parenting time.

On July 25, 2024, Rodriquez-Fletcher recommended that parenting time with both Tiffany and Alfredo Sr. decrease to 6 hours a week. In addition to conducting trauma assessments for Daniel and Gabriel, Rodriquez-Fletcher also began seeing Alfredo Jr. in May 2023 and Davina in March 2024 for individual play therapy. Rodriquez-Fletcher testified that her recommendation came as a result of the termination petitions having been filed, both parents actively using substances, both parents routinely canceling roughly one visit a week, and reports from Alfredo Jr. and Davina's placement that the children were having increased emotional and behavioral regulation issues following parenting time. There was also concern that Alfredo Sr. was unduly influencing the children, as Alfredo Sr. would seemingly encourage Alfredo Jr. to report that his placement had spanked him in videos recorded by Alfredo Sr. The Department subsequently reduced parenting time in accordance with the therapeutic recommendation.

Daniel and Gabriel's foster mother, their maternal grandmother, testified that Daniel and Gabriel look forward to parenting time with Tiffany and enjoy spending time with her. She also stated that Daniel and Gabriel express a desire to live with Tiffany again, but only if Alfredo Sr. is not living in the home.

Alfredo Jr. and Davina's foster mother, a family friend, testified that they are excited to attend parenting time with both Tiffany and Alfredo Sr. However, when Alfredo Jr. and Davina come home from visits they are "naughty, whiney, crying." She estimated that their behavior lasts approximately 90 minutes following their return to the foster home from a visit.

(d) Domestic Violence

Rodriquez-Fletcher testified that during Gabriel's trauma assessment, he reported witnessing Tiffany and Alfredo Sr. hitting each other (most of the time Alfredo Sr. hitting Tiffany) and Tiffany's physical injuries. Gabriel also reported hearing Tiffany and Alfredo Sr. yelling and fighting, name calling, and throwing and breaking items inside the home.

Additionally, Gabriel disclosed that he and Daniel had been physically abused by Alfredo Sr. Gabriel detailed instances when they had been beaten, sometimes with a belt, and when Alfredo Sr. had placed his hands over the children's faces so that they were unable to breathe. In Daniel's trauma screening, he likewise acknowledged a history of domestic violence in the home and physical abuse by Alfredo Sr. Gabriel reported that Daniel was abused more than he was, and at times Gabriel pretended to be asleep to avoid being beaten by Alfredo Sr. Gabriel expressed to Rodriquez-Fletcher that he felt guilty because he did not do enough to help Daniel.

Rodriquez-Fletcher conducted a "safe house activity" with Gabriel and Daniel during their respective trauma assessments. During the activity, the children individually selected who gets to

live in the safe house and who can visit the safe house. Both Gabriel and Daniel stated that their siblings and grandmother could live in the safe house, and that Tiffany could visit so long as Alfredo Sr. was not with her.

Rodriquez-Fletcher testified that Daniel and Gabriel scored "very high" for post-traumatic stress disorder (PTSD). Rodriquez-Fletcher was also concerned that both children had "trauma-based attachment issues and parent-child relational problem." Rodriquez-Fletcher opined that neither Daniel nor Gabriel appeared to have a "safe, secure, healthy attachment style." Rather, their attachment styles were anxious, as both children loved Tiffany and wanted to be close with her, but they were also afraid to be with her. This dynamic created internal conflict within Gabriel and Daniel of wanting to be with Tiffany but not being sure if she is safe. Both Daniel and Gabriel also expressed being fearful of Alfredo Sr. and worried about retaliation from Alfredo Sr. due to their disclosures.

Rodriquez-Fletcher had also testified that during therapy sessions, Alfredo Jr. exhibited "a lot of aggression," and "a very low frustration tolerance." Alfredo Jr. would frequently hit Rodriquez-Fletcher with his therapy toys and would exhibit signs of "trauma play." Rodriquez-Fletcher testified that there was often a fight or a battle during play therapy and that Alfredo Jr. would usually get out toy knives and guns. Alfredo Jr. would often take one particular kitchen knife and hold it up the to the dolls and stuffed animals and say that "if they don't stop, he will cut their eye out[.]" Rodriquez-Fletcher opined that Alfredo Jr.'s play could be indicative of domestic violence.

Tiffany testified that the event that led to the children's removal was a misunderstanding. Tiffany stated that she was having a "bipolar episode" during an argument with Alfredo Sr., and that Daniel had actually seen Alfredo Sr. attempting to calm Tiffany down by hugging her. Tiffany then "black[ed] out a little bit" and testified that she did not fully remember what happened.

Tiffany acknowledged that that there could have been domestic violence in the home, but that she does not remember it. Tiffany also stated that she did not remember Alfredo Sr. physically abusing Daniel or Gabriel. Tiffany did not think that her children would lie about witnessing domestic violence and believes them "[t]o a point." However, Tiffany also stated that there had "been a lot of brainwashing in my family that my mother has been a part of that. I feel the kids are confused on a couple things."

Templeton testified that Tiffany was not able to maintain the children's safety in her home. While Templeton noted that Tiffany had found and maintained a stable job and home, Tiffany continued to allow Alfredo Sr. to come over to her house and have contact with Daniel and Gabriel. Templeton testified that on Father's Day in 2024, Tiffany had a supervised visit with all four children. According to Templeton, Tiffany and the children were behind Tiffany's house when Alfredo Sr. came walking around the other side of the house. Tiffany and Alfredo Sr. were prohibited from having parenting time together, so Tiffany and the children immediately went back into Tiffany's house. The family support worker who was supervising the visit believed the contact was deliberate because it occurred on Father's Day. Gabriel also reported to Templeton that Alfredo Sr. was sometimes present during Tiffany's parenting time and because of this "they don't want to move home, that they're scared to go home."

Tiffany testified that Alfredo Sr. is part of her informal support network. She also stated that Alfredo Sr. is contracted by her landlord to make repairs at her house and to mow her lawn. Because Alfredo Sr. is Tiffany's landlord's "go to guy," "[h]e's kind of around anyways."

Tiffany testified that at the time of trial, her relationship with Alfredo Sr. was only a coparenting relationship. According to Templeton, law enforcement, the children, and people around town report that Tiffany and Alfredo Sr. are always together and engaged in a relationship beyond coparenting. Gabriel told Templeton during her monthly visits with the children that Tiffany and Alfredo Sr. were "boyfriend and girlfriend."

Templeton testified there are "emotional safety concerns" about Tiffany and Alfredo Sr. spending time together even outside the presence of the children. According to Templeton, Alfredo Sr. wants "power and control" over Tiffany. Templeton noted that during the voluntary case, Alfredo Sr. controlled the phone and car while the family was living in a secluded area. According to Templeton, the present case plan is focused on Tiffany learning self-reliance and self-assurance.

(e) Children's Therapeutic Needs

Rodriquez-Fletcher testified that, generally, trauma manifests itself in children as fear, sadness, reactive behaviors, and being clingy or avoidant. Chronic exposure to trauma impacts children into their adolescence and adulthood, and can cause attachment issues, anxiety, depression, and other mood disorders. Sufferers are at higher risk for substance use and engaging in unhealthy relationships.

Rodriquez-Fletcher testified that Gabriel was worried about being killed himself or someone else being killed. He would try to avoid experiencing particular emotions and suppress negative thoughts and memories. Gabriel acknowledged that he was still afraid of Alfredo Sr. and did not understand why Tiffany did not help Daniel and him. He experienced sleep issues and stomach aches. He continued to worry about his siblings' and Tiffany's safety.

Rodriquez-Fletcher testified that Gabriel and Daniel have experienced repeated trauma due to multiple removals (and a placement change during the juvenile case). Consequently, both children have attachment issues. She testified that a lack of secure attachment is related to issues with mental health, substance abuse, relationships, as well as an increased likelihood of being involved in the legal system. The longer "older children" lack a caregiver to securely attach to, and know that the caregiver is permanent, the greater the long-term issues become. Rodriquez-Fletcher opined that Gabriel and Daniel have a need to know what their permanency is going to look like.

Rodriquez-Fletcher testified that she met with Tiffany roughly eight times from November 2023 to May 2024 to provide Tiffany with feedback and education about Daniel's and Gabriel's trauma assessment results to help Tiffany "become a safe and protective parent." Rodriquez-Fletcher raised her concerns regarding the domestic violence in the home, the physical abuse perpetrated by Alfredo Sr., and the controlled substance use. Tiffany denied that there was any domestic violence, insisting there had only been verbal altercations in the home. Initially, she did not believe that Alfredo Sr. had abused Daniel or Gabriel, and that "the children were mistaken or that they misunderstood things or felt that the children were brainwashed." Later Tiffany told Rodriquez-Fletcher that she was the one who left bruises on the children. Rodriquez-Fletcher

testified that in January and February of 2024, Tiffany began to open up more before she ultimately disengaged from working with Rodriquez-Fletcher.

Rodriquez-Fletcher opined that if Tiffany remains in denial, she will not be able to put her children's needs above her own wants or needs and would not be able to protect them from further abuse and trauma. Rodriquez-Fletcher was concerned about Tiffany being "easily overwhelmed, avoidant, and dismissive[.]" She opined that Tiffany protects Alfredo Sr. and chooses to believe him over her children. Rodriquez-Fletcher did not observe any change in Tiffany's ability to protect her children or herself during the pendency of the juvenile case.

Rodriquez-Fletcher testified that Tiffany struggled to acknowledge her own trauma and mental health needs. Templeton testified that Tiffany had been discontinued as a patient from two prior therapists for missing appointments. When Templeton sent Tiffany's most recent therapist the Department's safety assessments, the therapist was surprised, as Tiffany had not disclosed the termination proceedings, her on-going relationship with Alfredo Sr., or her being the victim of domestic violence.

Regarding the two younger children, Rodriquez-Fletcher testified that Alfredo Jr. is shifting from aggressive play to play involving healing during his therapy sessions. She opined that Alfredo Jr. needs a caregiver who understands his trauma narrative so that the caregiver can continue to help Alfredo Jr. regulate and understand his history. Further, the caregiver must acknowledge that "these bad things that [the children] have experienced have happened."

Davina is excited to come to therapy and her play centers around themes of nurturing and healing. Davina likes to take care of baby dolls, cook in a toy kitchen, and play with a medical kit. Rodriquez-Fletcher does not have the same level of concern regarding Davina's ongoing therapeutic needs as she was removed from the home at a younger age than her brothers. However, Davina is clingy with her foster mother and Rodriquez-Fletcher opined that Davina needs permanency, consistency, and help to coregulate.

Rodriquez-Fletcher met with Alfredo Sr. in August 2023 after he had twice canceled the appointment. Rodriquez-Fletcher testified that during the session, Alfredo Sr. told her there were "a lot of misunderstandings as far as domestic violence." Alfredo Sr. denied any physical domestic violence in the home and stated that he and Tiffany would only argue or yell at one another. Alfredo Sr. refused to discuss Daniel or Gabriel with Rodriquez-Fletcher as "they were not his children[.]"

Rodriquez-Fletcher had an observation session with Alfredo Jr., Davina, and Alfredo Sr. in August 2023. Rodriquez-Fletcher testified that Alfredo Sr. was very polite to her, playful with the kids, and recognized when Davina needed a diaper change and changed her. Alfredo Jr. was aggressive and hyperactive during the observation session. He engaged in "daredevil behavior," such as crawling into the blinds, jumping off a chair, and pushing Davina. According to Rodriquez-Fletcher, Alfredo Sr. said that Alfredo Jr. and Davina "usually weren't like that with him," and "I don't know what the foster home is teaching them." Rodriquez-Fletcher testified that she was concerned about Alfredo Jr.'s hyperactive behavior, which she described as unusual. She was also concerned about Alfredo Sr.'s blaming Alfredo Jr.'s behavior on the foster parents, rather than taking any parental responsibility.

Alfredo Sr. contacted Rodriquez-Fletcher's office to schedule another session with the children in December 2023. Rodriquez-Fletcher attended a family team meeting that same day

where Alfredo Sr. was "very hostile, threatening, intimidating." Alfredo Sr. displayed the same behavior at a family team meeting in January 2024 and Rodriquez-Fletcher determined that she would no longer meet with him due to safety concerns and his "apparent" need to engage with individual therapy.

Rodriquez-Fletcher also discussed Alfredo Jr. and Davina's needs with Tiffany during their sessions from November 2023 to May 2024.

Templeton testified that despite numerous forensic interviews by Daniel and Gabriel and several law enforcement reports, Tiffany and Alfredo Sr. have maintained throughout the case that they have never had a physical altercation. Rodriquez-Fletcher testified that when trauma happens to children, the parents that make the most progress are the ones who can acknowledge that the trauma has happened. She opined, "If you can't acknowledge [that trauma occurred], you can't heal it and if you can't heal it, you tend to repeat it."

### 3. ORDERS

Following the termination trial, the juvenile court entered four separate orders on November 18, 2024, terminating Alfredo Sr.'s rights to Alfredo Jr. and Davina, and terminating Tiffany's rights to Daniel, Gabriel, Alfredo Jr., and Davina. The court found that the State had met its burden of proving grounds for termination under § 43-292(2) regarding Gabriel and under § 43-292(7) regarding Daniel, Alfredo Jr., and Davina. The court further found that Tiffany and Alfredo Sr. are unfit parents and that it was in the best interests of the children to have their parental rights terminated.

## III. ASSIGNMENTS OF ERROR

Tiffany assigns, restated, that the juvenile court erred in finding that it was in the best interests of the children to terminate her parental rights to Daniel, Gabriel, Alfredo Jr., and Davina.

Alfredo Sr. cross-appealed, assigning, restated, that the juvenile court erred in finding that it was in the best interests of the children to terminate his parental rights to Alfredo Jr. and Davina.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id*.

## V. ANALYSIS

### 1. STATUTORY GROUNDS FOR TERMINATION

The juvenile court found that the State had presented clear and convincing evidence to satisfy § 42-292(2) regarding Gabriel and § 42-292(7) regarding Daniel, Alfredo Jr., and Davina. Neither Tiffany nor Alfredo Sr. challenges the juvenile court's finding that statutory grounds to terminate have been met. However, because our review is de novo, we address this requirement for termination of parental rights.

## (a) § 43-292(2)

In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. See *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). One such ground is when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. *Id*. Past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental rights termination case under § 43-292(2). *Id*. One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *Id*.

Rodriquez-Fletcher testified that on his trauma assessment, Gabriel scored very high for indicators of PTSD. During his assessment, Gabriel disclosed witnessing domestic violence in the home between Tiffany and Alfredo Sr. and being physically abused by Alfredo Sr. Gabriel was still afraid of Alfredo Sr. at the time of the assessment, conducted over a year after he had been removed from the home. He was also upset with Tiffany for not understanding that she needed to protect him and expressed guilt over his own perceived failure to protect Daniel from Alfredo Sr.'s abuse. Rodriquez-Fletcher testified that Gabriel frequently worried about his siblings', Tiffany's, and his own safety. He experienced physical manifestations of his anxiety, such as sleep issues and stomach aches.

In his trauma assessment, Gabriel expressed loving Tiffany but having anxiety about his long-term placement. He worried that Tiffany and Alfredo Sr. would resume their relationship and he and Daniel would again be physically abused. Regarding Gabriel's problem with parent-child relations, Rodriquez-Fletcher emphasized Gabriel's internal conflict of wanting to be with Tiffany and loving her, but not knowing whether he is safe with her. In the safe house activity, Gabriel said that Tiffany could visit the house so long as Alfredo Sr. was not with her. Gabriel did not allow Tiffany to live in the safe house with his siblings and grandmother.

Rodriquez-Fletcher testified about her concerns for Gabriel. Due to his multiple removals from their home, he has already experienced repeated trauma. Coupled with Gabriel's attachment issues, the longer he is unable to securely attach to a permanent caregiver, the more likely he will experience issue with his mental health, substance abuse, relationships, and the legal system. Rodriquez-Fletcher opined that Gabriel needed permanency to develop a healthy attachment.

Tiffany either does not or will not understand Gabriel's needs. Rodriquez-Fletcher testified that she attempted to provide Tiffany with feedback and education about Gabriel's trauma assessment results to help Tiffany become a safe and protective parent. Tiffany denied there was any physical domestic violence in the home and did not believe Alfredo Sr. abused Gabriel. Tiffany maintained that Gabriel was either mistaken or misunderstood things, or that he had been influenced to disclose his allegations of abuse. Later, Tiffany herself claimed that she was the one who had left bruises on her children.

Testimony at trial evidenced that Tiffany does not see an issue with allowing Alfredo Sr. around her home or Gabriel. As Rodriquez-Fletcher stated, if Tiffany remains in denial regarding the various traumas suffered by Gabriel, she will not put Gabriel's needs above her own and will not protect him from further abuse and trauma. Based on Tiffany's action throughout the entirety

of the juvenile case and her testimony at trial, Tiffany continues to protect Alfredo Sr. and place Gabriel in harm's way by insisting on maintaining a relationship with Alfredo Sr. So long as Tiffany is unable to be a protective parent, Gabriel will likely experience repeated trauma and fail to develop a secure and healthy attachment.

Because the State presented clear and convincing evidence that Gabriel had been substantially and continuously or repeatedly neglected and refused necessary parental care and protection, statutory grounds for termination of Tiffany's parental rights exist regarding Gabriel. If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

### (b) § 43-292(7)

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *Id*.

Here, Daniel, Alfredo Jr., and Davina have been in out-of-home placement for 15 or more months of the most recent 22 months. The children were removed from Tiffany's and Alfredo Sr.'s care on August 23, 2022, and have remained out of the home since their removal. The State filed the motions for termination of parental rights on December May 9, 2024. The existence of the statutory basis alleged § 43-292(7) should be determined as of the date the petition or motion to terminate is filed. See *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023). At the time of filing, the children had been in out-of-home placement for over 20 months. Thus, the statutory requirement for termination under § 43-292(7) has been met.

Because the State presented clear and convincing evidence that the children had been in an out-of-home placement for 15 or more months of the most recent 22 months, statutory grounds for termination of Tiffany's and Alfredo Sr.'s parental rights exist regarding Daniel, Alfredo Jr., and Davina. See *In re Interest of Becka P. et al., supra*.

### 2. BEST INTERESTS AND UNFITNESS

In addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). In light of the constitutionally protected nature of the parent-child relationship, there is a rebuttable presumption that it is in the child's best interests to share a relationship with his or her parents. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). The presumption that it is in the child's best interests to share a relationship with his or her parent can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*. Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental

- 11 -

obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). While both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

Both Tiffany and Alfredo Sr. contend that they provided proper parental care to the children. Both point to the fact that this case was adjudicated as a no-fault case and assert that they had housing, employment, and were able to meet the needs of the children during supervised visits. They assert that because they were not permitted to have unsupervised visits with the children, they were not given the opportunity to demonstrate their ability to meet the children's educational needs or to demonstrate their ability to protect them. Therefore, they argue that the State failed to prove that they were unfit parents.

Tiffany's and Alfredo Sr.'s controlled substance use was an issue affecting the children's well-being before the juvenile case began. Daniel, Gabriel, and Alfredo Jr. all tested positive for methamphetamine at birth. During the entirety of both the voluntary case and the juvenile court case, Tiffany and Alfredo Sr. continued to test positive for controlled substances. Neither parent ever progressed to unsupervised visits with their children, in part because of their continued substance use. Though twice Tiffany was able to sustain a months-long period of sobriety, Tiffanys' visits with the children never progressed beyond semi-supervised because she would invariably again test positive for a controlled substance. There was no evidence that either Tiffany or Alfredo Sr. had ever completed a drug and alcohol evaluation.

Even more concerning is Tiffany's and Alfredo Sr.'s denial of domestic violence in the home. Rodriquez-Fletcher testified to the children's need for a caregiver who acknowledges and understands the cause of the children's trauma in order to help them regulate and heal emotionally. However, both Tiffany and Alfredo Sr. deny any physical violence has ever occurred between them and that Daniel and Gabriel were ever physically abused by Alfredo Sr.

Rodriquez-Fletcher testified that Tiffany and Alfredo Sr. have their own trauma and mental health issues to work through in order to restore their ability to become fit and proper parents. However, Tiffany's most recent therapist was surprised to learn from Templeton that Tiffany had been a victim of domestic violence. Rodriquez-Fletcher did not observe any change in Tiffany's ability to protect her children or herself during the pendency of the juvenile case. If Tiffany cannot be honest with her mental health practitioner, it is unlikely that she will make the therapeutic progress necessary to become a protective parent. There was no evidence adduced at trial regarding Alfredo Sr.'s therapeutic progress.

As stated by Rodriquez-Fletcher, the parents that make the most progress are the ones that acknowledge that trauma has happened. Daniel and Gabriel scored high for indicators of PTSD, Alfredo Jr. displays aggressive and violent play, and Davina needs help to regulate herself. Rodriquez-Fletcher also testified to the various long-term risks to children who have suffered trauma and lack a healthy attachment to a caregiver.

Based on the evidence presented, there has been minimal change in Tiffany's and Alfredo Sr.'s ability to acknowledge their domestic violence dynamic and be accountable to the traumas suffered by their children over the course of the case. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. See *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). The children have been in foster care since August 2022. Rodriquez-Fletcher testified to their increased need for permanency due to their trauma history, diagnoses, and behavioral needs. The children deserve stability and should not linger in foster care while Tiffany and Alfredo Sr. are unable to rehabilitate themselves. Accordingly, we find there was clear and convincing evidence to show that Tiffany and Alfredo Sr. were unfit and that terminating their parental rights was in the children's best interests.

## VI. CONCLUSION

Upon our de novo review of the record, we conclude the State proved by clear and convincing evidence that grounds for termination of Tiffany's parental rights to Gabriel existed under § 43-292(2) and to Daniel, Alfredo Jr., and Davina existed under § 43-292(7). Grounds for termination of Alfredo Sr.'s parental rights to Alfredo Jr. and Davina were proved by clear and convincing evidence under § 43-292(7). The State also proved that the termination of Tiffany's and Alfredo Sr.'s parental rights is in the children's best interests. Accordingly, the juvenile court's orders are affirmed.

AFFIRMED.